UNITED STATES of America, Appellee,

v.

Jose A. GARCIA, Appellant.

UNITED STATES of America, Appellee,

v.

Thomas W. BARKER, Appellant.

UNITED STATES of America, Appellee,

v.

Dana G. STEPHENSON, Appellant.

UNITED STATES of America, Appellee,

v.

Thomas LAWRENCE, Appellant.

UNITED STATES of America, Appellee,

v.

Roberto TRELLES, Appellant.

Nos. 85–1427, 85–1460 to 85–1463.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1985.

Decided Feb. 25, 1986.

Certiorari Denied April 28, 1986.
See 106 S.Ct. 1797.

Alan G. Stoler, Miles W. Johnston, Jr., James M. Kelley, Gary R. Pearson & John Stevens Berry of Lincoln, Neb., for appellants.

Robert F. Kokrda, Omaha, Neb., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Jose A. Garcia, Thomas W. Barker, Dana G. Stephenson, Thomas Lawrence, and Roberto Trelles appeal their convictions on various counts related to a conspiracy to possess and distribute controlled substances. The jury found all appellants guilty of conspiracy to distribute and of possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a) & 846.[1] In addition, the jury found each appellant guilty of several other varied offenses. The District Court[2] entered judgment against five[3] of the original seven defendants and granted in favor of the other two defendants a judgment of acquittal notwithstanding the verdict.[4] The five convicted defendants now appeal, challenging both their convictions and sentences. We affirm.

## I.

The essence of the government's case is that Stephenson and Garcia were partners in buying cocaine and distributing it in Lincoln, Nebraska and the surrounding area. They obtained the cocaine from Trelles in Miami, Florida, and stored the cocaine at the apartment they rented under

---

1. Section 841(a) provides that "[e]xcept as authorized by this subchapter it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

2. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

3. The jury found Stephenson guilty of conspiracy, six counts of using a telephone to facilitate a felony, six counts of distribution, and one count of interstate travel to facilitate a felony.

The jury found Trelles guilty of conspiracy, five counts of using a telephone to facilitate a felony, six counts of distribution, and one count of interstate travel to facilitate a felony. The jury found Garcia guilty of conspiracy, five counts of using a telephone to facilitate a felony, five counts of distribution, and one count of interstate travel to facilitate a felony. The jury found both Lawrence and Barker guilty of conspiracy, three counts of using a telephone to facilitate a felony, two counts of distribution, and one count of interstate travel to facilitate a felony.

4. After reviewing the evidence implicating defendants Jay Jarvis and Janet Languis, the District Court concluded that a reasonable person would have a reasonable doubt about their guilt. *United States v. Stephenson*, No. CR84–L–18 (D.Neb. Feb. 14, 1985) (Memorandum on Motions of the Defendants Jarvis and Languis for Judgment of Acquittal).

assumed names. Stephenson and Garcia would occasionally meet at the apartment (Garcia-Stephenson apartment), having arranged their meetings by telephone using the code language of "working out at the Y." According to the government, Stephenson sold cocaine to Tiffany Tyrrell and Debra Frazier (who later married Tyrrell), who then distributed the cocaine to their customers, including several police officers. Stephenson also allegedly sold cocaine to Barker, Lawrence, and Russell Runyan. Barker, in turn, sold cocaine to various customers, including Jay Jarvis, who resold it to others. During the time of the conspiracy, Stephenson lived with Janet Languis at her home in Lincoln.

The investigation began in 1983 when the Lincoln Police Department received information that Tiffany Tyrrell was dealing in cocaine and other controlled substances. Undercover police officers purchased cocaine from Tyrrell on several occasions and then broadened the investigation by putting a pen register [5] on Tyrrell's telephone and on other telephones. From the data culled from the pen registers, the police obtained orders to wiretap Stephenson's telephone and to place an eavesdropping device in the Garcia-Stephenson apartment. The police combined wiretap information, physical surveillance, and Tyrrell's statements to undercover police officers and concluded that Garcia previously had traveled from Lincoln to Florida under an assumed name. Physical surveillance established that the participants in the drug conspiracy met occasionally in bars and at each other's residences. From the wiretaps, the police learned that Stephenson planned a trip from Lincoln to Miami in late March or early April 1984.

Stephenson traveled to Miami in early April 1984. Upon returning from Florida, Stephenson left the Eppley, Nebraska airport and arrived in Lincoln with a passenger. The sixty mile trip had taken him approximately one hour and a half. The police followed Stephenson to a bar, and then to the Garcia-Stephenson apartment. Stephenson entered the apartment alone and left a few minutes later. The police immediately arrested Stephenson without a warrant and searched him, his briefcase, and his car. The search yielded an airline ticket, business cards, and scraps of paper bearing various notations and telephone numbers. In Stephenson's car, the police found a small plastic tube or "coke straw" which contained cocaine. Later, pursuant to search warrants, the police found cocaine at the Garcia-Stephenson apartment and at Stephenson's residence.

In June 1984, a federal grand jury indicted appellants and five others for conspiracy to distribute and possession with the intent to distribute cocaine, and related offenses. Before trial, three of those indicted—Tiffany Tyrrell, Debra Frazier Tyrrell, and Russell Runyan—entered into plea agreements, and then testified against appellants at trial.

Appellants assert several grounds for overturning their convictions and reversing their sentences. According to appellants, the District Court committed reversible error by refusing to grant their motions for severance; by not allowing them to cross-examine certain prosecution witnesses about the witnesses' gambling activities; by allowing the testimony of three former co-defendants whose plea agreements rewarded them for such testimony; by refusing to suppress evidence culled from the wiretaps and eavesdropping devices; by refusing to suppress evidence seized from one of the appellants in a warrantless search; and by deciding there was sufficient evidence to allow the question of conspiracy go to the jury. In addition, appellants contest their sentences on the ground that the District Court sentenced them more harshly than the defendants who pled guilty and then testified against appellants at trial.

5. A pen register is a device that records the time a call is placed on a particular telephone, the number called, and the duration of the call.

## II.

### A.

■ Appellants contend that the District Court erred in refusing to grant their pretrial motions for severance, both as to counts and as to defendants. Assuming that this issue was properly preserved for appeal (which is not entirely clear), we disagree. A motion to sever rests within a district court's sound discretion, and we will not reverse that decision absent a showing of clear prejudice indicating an abuse of discretion. *United States v. Love,* 692 F.2d 1147, 1152 (8th Cir.1980). "The general rule is that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Lee,* 743 F.2d 1240, 1248 (8th Cir.1984). Appellants must show that the denial of severance clearly and actually prejudiced them. *United States v. Miller,* 725 F.2d 462, 467 (8th Cir.1984).

■ Here, the proof of charges against each appellant was inter-woven with the proof of charges against other appellants. Discrete items of evidence at trial usually applied to at least two of the original defendants, and frequently to virtually all of them. We believe appellants have not met their burden of showing that the jury was unable to compartmentalize the evidence against them. Although each appellant was found guilty of conspiracy, each was also found guilty of varying numbers of the underlying offenses, indicating that the jury was able to distinguish between counts and defendants, and was not confused. Moreover, the District Court was not required to sever defendants or counts simply because the evidence may have been more damaging against one appellant than the others. *Love,* 692 F.2d at 1152. After reviewing the evidence in light of the jury verdict, we find that the District Court did not abuse its discretion in denying appellants' motions to sever the trials or counts.

### B.

■ Appellants next argue that the District Court erred by restricting their cross-examination of prosecution witnesses who were former co-defendants about the witnesses' and the appellants' gambling activities. However, appellants failed to make timely objections to the District Court's rulings limiting the scope of cross-examination. Trial Record at 1102, 1481 & 2272–73. Accordingly, the issue is not properly before us. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Cole v. Hunter,* 726 F.2d 434, 436 (8th Cir.1984). Despite appellants' failure to make timely objections at trial, we may review the District Court's rulings under the standard of plain error. Fed.R.Crim.P. 52(b); *Hawkins v. Missouri Pacific Railroad,* 188 F.2d 348, 350 (8th Cir.1951). From our review of the record, we also are satisfied that the District Court's rulings limiting cross-examination on the subject of gambling did not affect appellants' substantial rights or result in a miscarriage of justice. *See United States v. Berzinski,* 529 F.2d 590, 594 (8th Cir. 1976); *Bernard v. Omaha Hotel, Inc.,* 482 F.2d 1222, 1224 (8th Cir.1973).

### C.

■ Appellants contend that it was reversible error for the District Court to allow their former co-defendants to testify against them at trial. Appellants argue that Tiffany Tyrrell, Debra Frazier Tyrrell, and Russell Runyan secured plea agreements that rewarded them for testifying against appellants and assuring that the jury convicted appellants. Essentially, appellants invite this Court to reconsider the issue initially raised in *United States v. Waterman,* 732 F.2d 1527, 1533 (8th Cir. 1984) (panel and en banc decisions). We believe, however, that appellants have mischaracterized the plea agreements in this case. Whatever the current status of the *Waterman* issue, the plea agreements here simply do not present that issue.

In *Waterman,* a panel of this Court decided that a plea agreement which the

Court read as conditioning leniency to the plea-bargaining defendant on his testimony's leading to Waterman's conviction created a risk of perjury so great that even the jury's full knowledge of the agreement was insufficient to assure the fundamental fairness required by the due process clause of the Fifth Amendment. Accordingly, the panel held that the admission of such testimony is reversible error. *Id.* at 1530–33. The full Court then granted the government's petition for rehearing en banc, thereby vacating the panel opinion. In its en banc decision, an equally divided Court rejected the panel's approach and affirmed the District Court's decision allowing the testimony. *Id.* at 1533. The Supreme Court then denied certiorari. —— U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985). As we recently noted, the effect of the rehearing en banc was to deny precedential value to either the panel opinion or the en banc decision. *United States v. Fazzino,* 765 F.2d 125, 126 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985).

■ A plea agreement that grants favors to a prosecution witness in return for truthful testimony about the defendants is not unlawful. *See United States v. Librach,* 536 F.2d 1228, 1230 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). In *Librach,* unlike *Waterman,* the government had not conditioned leniency to the witness upon conviction of the defendant. The witness could testify without fear of losing his bargain even if the jury did not convict the defendant despite the witness's truthful testimony. 536 F.2d at 1230. More recently, in *Fazzino,* we found no factual basis for the appellant's contention based on *Waterman* that the agreement between the government and its witness impermissably tainted the witness's testimony. 765 F.2d at 126.

Similarly, in the present case the District Court made specific findings that the plea agreements did not create the risk of prejury that the panel opinion in *Waterman* found unacceptable.

A district court's findings of fact will not be overturned on appeal unless they are clearly erroneous. *United States v. Dochterman,* 630 F.2d 652, 653 (8th Cir.1980). Our review of the record and the plea agreements convinces us that the District Court's findings that the agreements did not create an incentive for the witnesses to commit perjury are not clearly erroneous. These plea agreements more nearly resemble the plea agreement approved in *Librach,* 536 F.2d at 1230, and are clearly distinguishable from the plea agreement in *Waterman.* This case thus does not present the *Waterman* issue. As in *Fazzino,* "even if the panel opinion [in *Waterman*] had precedential value its holding would not apply under the facts of this case." 765 F.2d at 126.

**D.**

■ Appellants assert several grounds for suppressing evidence culled from the wiretaps and eavesdropping devices. Their first line of attack goes to the validity of the affidavits presented to the state court judge in support of the application for wiretapping and eavesdropping orders. By way of background, we note that 18 U.S.C. § 2518 sets forth the procedures for intercepting wire and oral communications.[6] Courts must test applications for wiretaps and eavesdropping in a "'practical and commonsense fashion.'" *United States v. Brick,* 502 F.2d 219, 224 n. 14 (8th Cir.1974) (citation omitted). *See also United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). A reviewing court must accord broad discretion to the decision to authorize wiretap-

---

6. Section 2518(1) provides that each application for an order authorizing interception of oral or wire communications shall contain specific information. For the purpose of this appeal, we take note of the following sections:

(b) a full and complete statement of the facts and circumstances relied upon by the appli-

cant, to justify his belief that an order should be issued ...;

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. ...

ping or eavesdropping. *See id.; United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976); *see also Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (search warrant). Moreover, those against whom the resulting evidence is admitted have the burden of proving the wiretapping was unlawfully obtained or used. *United States v. Phillips*, 540 F.2d 319, 325 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976).

Appellants contend that the District Court erred by not allowing appellants to explore the good faith of the affiant, citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). They assert that the police officers acted with knowing and reckless disregard for the truth, and used deliberate falsehoods and misrepresentation to establish probable cause for the orders. Appellants also argue that the affiant lacked personal knowledge of most of the data he swore was true. In a related argument, appellants contend that the affidavits were insufficient because they are based on supposition, conjecture, hearsay, and the unsupported assertions of undercover police officers. Appellants claim that they must be allowed to explore the state of mind of the affiant as well as the state of mind of the police officers providing information to the affiant.

■ An application for a wiretap is similar in purpose to an application for a search warrant, *i.e.*, to present sufficient information to enable a detached and neutral judicial officer to find that probable cause exists to issue the order or warrant. Accordingly, the Supreme Court's requirements in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), apply to wiretap and eavesdropping orders. At the pretrial suppression hearing in this case, the defendants had the burden of proving by a preponderance of the evidence that the affiants knowingly, intentionally, or recklessly included false statements in the affidavits. If they had met this burden, they would have been entitled to have

the court set aside those statements and then review the remaining portions of the affidavits to see if what remained was sufficient to establish probable cause. If the remaining content was insufficient to establish probable cause, the court's duty would have been to find the wiretap and eavesdropping orders invalid and to suppress the evidence seized. *See id.* at 156, 98 S.Ct. at 2676.

■ Appellants raised their issue about the good faith of the affiants at the pretrial suppression hearing. Appellants had ample opportunity to present their evidence of the affiants' reckless disregard for the truth and their lack of good faith. The magistrate considered appellants' evidence and ruled that they had not overcome the presumption in favor of the affidavits' validity and that the orders for the wiretaps and eavesdropping were supported by probable cause. The District Court reviewed the suppression hearing transcript and made a *de novo* determination concerning those portions of the magistrate's findings and recommendations to which appellants objected. These determinations are findings of fact, which we must uphold unless clearly erroneous. *United States v. Ross*, 713 F.2d 389, 392 (8th Cir.1983); *Dochterman*, 630 F.2d at 653. Our review of the transcript of the suppression hearing leads us to conclude that the challenged findings of the magistrate and the District Court are not clearly erroneous.

■ Appellants next argue that the affidavits supporting the requests for permission to wiretap and eavesdrop are deficient because they are based on hearsay, conjecture, and unsupported assertions. An initial problem with this argument is that appellants have failed to identify the statements that are allegedly improper. In addition, we note that the presence of hearsay in an affidavit is not fatal. Rather, where "there is a substantial basis for crediting the hearsay, it will not vitiate the finding of probable cause." *United States v. Agrusa*, 541 F.2d 690, 694 (8th Cir.1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977). Similarly, this Court

has held that an affidavit may rest on hearsay if it presents to the issuing judicial officer the facts and circumstances underlying the informant's conclusions, and from which the judicial officer may conclude that under the totality of the circumstances probable cause exists. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332 (search warrant); *cf. United States v. Kleve,* 465 F.2d 187, 191 (8th Cir.1972) (wiretap order). Appellants had an opportunity to explore these issues fully in the suppression hearing. They failed to convince the magistrate of any deficiency in the affidavits, and we do not find any error in his determinations nor in those of the District Court in reviewing and accepting the magistrate's findings and recommendations.

 As another prong of their attack on the validity of the affidavits, appellants argue that the police officers began the investigation with the sole objective of obtaining authorization to wiretap and eavesdrop. We find that this argument is entirely without merit. Appellants fail to mention any proof supporting their contention. In any event, what the officers intended at the outset of the investigation is immaterial. The record shows that they requested a wiretap only after making several undercover purchases of controlled substances and using other techniques such as pen registers and visual surveillance. We are satisfied, as were the magistrate and the District Court, that probable cause existed for the issuance of the orders authorizing wiretapping and eavesdropping.

Appellants also contend that the police officers failed to exhaust other available investigative techniques before requesting permission to wiretap and eavesdrop. Judicial officers may authorize interception of wire or oral communications if they find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). In addition, section 2518(1)(c) requires that each application for a wiretap contain a full and complete statement about the use of other investigative tech-

niques. These two sections create what courts have called the necessity requirement. *E.g., United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir.1985). "The statutory language suggests that before finding that a wiretap is necessary, the court must find that alternative methods have been tried or would not have succeeded." *Id.*

 In this Court's leading case on wiretapping, we recognized that Congress intended to restrict wiretaps to those which are both necessary and reasonable. Congress did not, however, require investigators to exhaust specific or all possible investigative techniques before a court could issue a wiretap order. *Daly,* 535 F.2d at 438 (citing *United States v. Smith,* 519 F.2d 516, 518 (9th Cir.1975)); *United States v. Jackson,* 549 F.2d 517, 537 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Rather, "Congress prohibited wiretapping only when normal investigative techniques are *likely* to succeed *and* are not too dangerous." 535 F.2d at 438 (emphasis in original). Accordingly, the affidavit need not explain away all possible alternative techniques because investigators are not required to use wiretaps or eavesdropping devices only as a last resort. *United States v. Matya,* 541 F.2d 741, 745 (8th Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977).

 In this case, the magistrate reviewed the affidavits, the state court's orders for wiretapping and eavesdropping, and conducted a pretrial suppression hearing. The magistrate found that the police officers adequately pursued other investigative techniques before requesting permission to wiretap and eavesdrop. The District Court reviewed the hearing transcript and accepted the magistrate's findings on this point. This is a finding of fact that we will uphold unless clearly erroneous. *Ross,* 713 F.2d at 392. After reviewing the record, we are satisfied that this finding is not clearly erroneous.

 Appellants' final argument concerns only the wiretap evidence. They as-

sert that the investigators failed to comply with the provisions of the wiretap orders and the rule of 18 U.S.C. § 2518(5) [7] limiting intrusion into conversations not related to the investigation. Congress passed this section to comply with the mandate of *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), that investigators conduct wiretapping with particularity. *Daly*, 535 F.2d at 440. The standard is one of reasonableness, and each case must be examined on its particular facts; "there can be no inflexible rule of law which will decide every case." *Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). The factors to be considered include the scope of the criminal enterprise, the government's reasonable expectation of the content of particular calls, the extent of judicial supervision, the length of the call, whether the call was a one-time only call, whether the call originated from a pay or a residential telephone, and whether the callers used ambiguous or coded language. *See id.* at 140–42, 98 S.Ct. at 1724–25; *Daly*, 535 F.2d at 441–42; *see also United States v. Losing*, 560 F.2d 906, 909 n. 1 (8th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Cox*, 462 F.2d 1293, 1300–01 (8th Cir.1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974). The question whether the police have complied with the particularity requirement in their monitoring of conversations is a question of fact, and the clearly erroneous standard governs our review of the trial court's determination of this question. *Ross*, 713 F.2d at 392. Our review of the record reveals that the magistrate and the District Court properly considered all the evidence in light of the *Scott* factors. We conclude that their findings that the police officers complied with the limiting provisions of the wiretap orders are not clearly erroneous.

### E.

■ Contesting the introduction of other evidence at trial, appellants argue that the District Court erred in failing to suppress evidence seized from Stephenson after his arrest. Only Stephenson has standing to assert this claim, *see Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978), so we will address the issue as if Stephenson alone had raised it. Although the police officers did not have an arrest warrant, they arrested Stephenson when he left the Garcia-Stephenson apartment on the night of his return from Florida. They proceeded to search him, his briefcase, and his car. Stephenson argues that the trial court should have suppressed the evidence gathered from the warrantless search of his car and briefcase because he maintained a reasonable expectation of privacy in his effects despite his arrest. He contends that the car and briefcase were in police custody and there was no danger either would have been removed or tampered with before the police could have obtained a search warrant.

■ Stephenson does not contest the lawfulness of the warrantless arrest and apparently concedes that the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to justify a prudent officer in believing that Stephenson had committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *accord Tennessee v. Garner*, — U.S. —, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2630–31, 61 L.Ed.2d 343 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975); *United States v. Henry*, 763 F.2d 329, 330 (8th Cir.1985). Moreover, once the police made a lawful arrest, they were entitled to search Stephenson without a warrant. *DeFillippo*, 443 U.S. at 35, 99 S.Ct. at 2630–31; *United States v. Franklin*, 728 F.2d 994, 997 (8th Cir.1984).

---

**7.** Section 2518(5) states in part: "Every order ... shall contain a provision that the authorization to intercept ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."

In *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), the Supreme Court held that a lawful custodial arrest justifies a warrantless search of the person arrested and of the area within his immediate control. In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Court held that a police officer could search the passenger compartment of an automobile incident to the contemporaneous arrest of its occupant. *Id.* at 460, 101 S.Ct. at 2864. Moreover, a police officer may also examine the contents of any containers found in the passenger compartment. *Id.* At the time of the arrest, Stephenson was in or just entering his car. Trial Record at 292, 319, 2627 & 2651. Under *Chimel* and *Belton,* the officers clearly were justified in searching the interior of the car and the briefcase, which Stephenson removed from the passenger compartment at the officers' request. The District Court therefore was correct in refusing to suppress the evidence seized from Stephenson after his arrest.

### F.

All appellants except Stephenson claim that the District Court erred in ruling that the prosecution had presented sufficient evidence to allow the conspiracy charge to go to the jury. We therefore have reviewed the trial transcript and exhibits to ascertain whether there was sufficient evidence to present a question for the jury as to the existence of a conspiracy and each appellant's participation in it. We conclude there was.

The jury's verdict must be sustained if there is substantial evidence in the record to support it, viewed in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Casperson,* 773 F.2d 216, 221 (8th Cir.1985). All factual disputes must be resolved in favor of the jury verdict. *United States v. Willis,* 774 F.2d 258, 260 (8th Cir.1985); *United States v. Smith,* 742 F.2d 398, 400–01 (8th Cir.1984). The government is entitled to all inferences that reasonably may be drawn from the evidence. *Casperson,* 773 F.2d at 221; *United States v. Nabors,* 762 F.2d 642, 652–53 (8th Cir.1985).

To be guilty of conspiracy, one must knowingly contribute to the furtherance of the conspiracy. *United States v. Wilford,* 710 F.2d 439, 448 (8th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). Knowing contribution requires some element of cooperation beyond mere knowledge of the existence of the conspiracy. *United States v. Brown,* 584 F.2d 252, 262 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). An agreement may include the performance of many transactions, and new parties may join or old parties terminate their relationship with the conspiracy at any time. *United States v. Warner,* 690 F.2d 545, 549 n. 7 (6th Cir. 1982). "Once the existence of a conspiracy has been established, even slight evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme to render him culpable." *United States v. Losing,* 560 F.2d 906, 912 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *see United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. Hassell,* 547 F.2d 1048, 1052–53 (8th Cir.), *cert. denied,* 430 U.S. 919, 97 S.Ct. 1338, 51 L.Ed.2d 599 (1977). The government need not prove that the defendant knew all the conspirators or was aware of all the details. *United States v. Jones,* 545 F.2d 1112, 1115 (8th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). Moreover, where sufficient evidence exists to support a finding that a conspiracy existed and that a particular defendant was a member of that conspiracy, a jury may find that defendant guilty of substantive crimes committed by coconspirators in furtherance of the conspiracy, even though the defendant did not participate in the substantive offense. *Casperson,* 773 F.2d at 224; *see*

*Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946).

After reviewing the voluminous 2,793 page trial transcript, the exhibits, and the 130 plus wiretap tapes that the jury heard, we conclude there was sufficient evidence to support the jury's verdict as to each of the appellants. We briefly summarize first the evidence establishing the conspiracy and then the evidence implicating each appellant except Stephenson, who as mentioned above, has not raised this issue.

■ The testimony of Tiffany Tyrrell, Debra Frazier Tyrrell, and Russell Runyan established the existence of a cocaine distribution and sales network involving Stephenson as one of its chief coordinators. This testimony was corroborrated by the testimony of undercover police officers who purchased cocaine from Tiffany Tyrrell, and wiretap and pen register evidence establishing a link between the Tyrrells and Stephenson at times pertinent to the transactions in question. The government also established that part of the money the police used to buy the cocaine from Tyrrell ended up in Stephenson's hands. Although the language the conspirators used on the telephone was guarded, and often in code, it is clear that Stephenson bought cocaine with the help of a friend of Cuban ancestry who was living in Florida. In addition, the evidence shows that Stephenson travelled to Florida under an assumed name on at least one occasion. While in Florida, he visited Trelles. Physical and surveillance evidence, as well as telephone conversations, established the relationship between Stephenson and Garcia, and the existence of a safe "stash house," an apartment that Stephenson and Garcia rented under assumed names. There they stored the cocaine and processed it before distributing it to the Tyrrells, Baker, Lawrence, and others for personal use and for resale. Further evidence of the Florida connection exists in the large quantity of cocaine that the police found in the apartment shortly after Stephenson's return from Florida. There is evidence from which the jury rea-

sonably could conclude that Trelles was Stephenson's source. There was also evidence of transactions between Stephenson and Barker and Lawrence consisting of telephone conversations and physical surveillance showing interactions and visits between appellants at times relevant to their prior drug-related telephone conversations. In sum, we believe there is ample evidence of a conspiracy to obtain and distribute cocaine.

■ The evidence implicating Garcia in this conspiracy consisted primarily of telephone conversations between Stephenson and Garcia and surveillance of their actions. Stephenson told Tyrrell that his source for the cocaine was two former high school friends of Cuban ancestry. One of the friends lived in Lincoln, the other in Florida. Garcia fits the description of the Lincoln friend. The evidence shows that Garcia travelled to Miami and returned to Lincoln in early February 1984, just before Tyrrell received enough cocaine from Stephenson to complete a transaction with the undercover police officers on February 6, 1984. Furthermore, Garcia, in conjunction with Stephenson, rented an apartment under an assumed name at which the police later found cocaine and equipment and paraphernalia associated with the use and sale of drugs. Police surveillance shows that Garcia and Stephenson met on several occasions at the apartment. At another point in the conspiracy, Garcia made at least eight calls during a single day to Trelles's residence in Florida. In addition, the pen registers showed that Garcia made several calls to Trelles's place of employment.

■ The evidence implicating Trelles is somewhat weaker than that implicating the other appellants, but we believe there is sufficient circumstantial evidence to link him to the conspiracy. Stephenson and Trelles had been friends in high school and talked periodically on the telephone during the time of the conspiracy. Stephenson told Tyrrell that one of his sources of cocaine was a Cuban friend living in Florida with whom he had attended high school. A witness identified the voice of the person

calling from Florida as being that of Trelles. Evidence secured from Stephenson's briefcase revealed that Stephenson had travelled to Florida under an assumed name immediately before the police found the stash of cocaine at the apartment in April 1984. The wiretaps show that Stephenson arranged to visit a Cuban friend, who the jury could reasonably conclude was Trelles, during his brief stay in Florida in early April. On the night he was arrested, Stephenson was carrying Trelles's business card. Furthermore, during the time of the conspiracy, several of the telephone conversations between Stephenson and Trelles were cut short and arrangements made to finish them from public telephone booths. In addition, as we noted above, Garcia also had conversations with Trelles on numerous occasions, several occurring near the time of drug transactions that were linked to the conspiracy.

■ We also conclude that the evidence against Barker and Lawrence is sufficient to support the jury's verdicts as to each of them. The language used in Stephenson's conversations with Barker and Lawrence is rather vague and secretive. At one point, Barker asked Stephenson if he could use Stephenson's "calculator" and "green attachment" to figure out some bills and "stuff." Runyan testified that "calculator" was a code word meaning the scales used to weigh out cocaine. The "green attachment" was a sifter. Stephenson referred to the calculator in a later conversation with Barker. There also was evidence of a series of conversations between Stephenson and Barker about what a jury could reasonably conclude were drug transactions. At one point, Barker obliquely referred to a weekend party being helpful to him, hinting at the prospect of potential sales of cocaine. Barker also notified Stephenson that he changed his telephone number because some of his friends had been giving his telephone number to strangers. From this conversation the jury could reasonably infer that Barker's friends had been giving his telephone number to people interested in purchasing cocaine. Because Barker did not know these

people, he did not want to deal with them, perhaps fearing that one might be an undercover police officer. Surveillance of Stephenson and Barker's movements confirmed some of the plans and discussions they had during the telephone conversations.

■ As in the case against Barker, the evidence against Lawrence is circumstantial, but nonetheless sufficient for the jury to find him guilty. On one occasion, Lawrence called Stephenson and vaguely referred to his hope that Stephenson might have "something else," *i.e.*, cocaine, for Lawrence. Stephenson thereafter went to see Lawrence and then met Garcia at the stash house. About a week later, Stephenson called Lawrence and arranged to leave something in a pitcher inside Lawrence's back door. Stephenson went to Lawrence's house and took a sack out of his car. In one telephone conversation with Stephenson, Lawrence said he had "some," but not what he expected—likely referring to money from drug sales. Other conversations referred to people who were scheduled to stop by Lawrence's house, but who had not appeared at the appointed time. Based on all the evidence, the jury could reasonably infer that Stephenson and Lawrence were discussing, and dealing in, illicit drugs, and that Lawrence was a member of the conspiracy.

**G.**

■ Finally, appellants argue that the District Court erred by sentencing appellants disproportionately to their former co-defendants who pled guilty and testified against appellants at trial. Where the sentence imposed falls within the statutory limits, we will not disturb it on appeal unless the trial court abused its discretion. *See Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 n. 16 (1983); *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *United States v. Gleason*, 773 F.2d 241, 242 (8th Cir.1985); *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir.1984). We must accord the District Court wide discretion in its sentencing decisions. *Orner v. United States*, 578 F.2d 1276, 1278 (8th

Cir.1978). Moreover, as we previously have held, mere variation in sentences between coactors in a criminal transaction is not alone a sufficient basis for requiring resentencing. *See United States v. Collins*, 690 F.2d 670, 674 (8th Cir.1982) (variance in sentences is not cruel and unusual punishment under the Eighth Amendment).

 We note first that each appellant's sentence falls within the statutory limits. In addition, before sentencing appellants and their former co-defendants, the District Court considered the pre-sentence reports and the gravity of the offenses of which each was convicted. The court properly took into account the extent to which the former co-defendants served the public interest by giving their truthful testimony. A convicted offender must "present a clear and convincing case of abuse of discretion ... or a patent violation of a constitutional guarantee to warrant setting aside a sentence." *Orner*, 578 F.2d at 1280. Appellants have not made such a showing. The sentences imposed are well within the sound discretion of the District Court, and we decline to disturb them.

### III.

For the reasons stated above, we affirm appellants' convictions and we do not disturb their sentences.