UNITED STATES of America, Appellee,

v.

Kevin MEGGERS, Appellant.

No. 89–1537.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1989.

Decided Aug. 22, 1990.

Frank J. Nidey, Cedar Rapids, Iowa, for appellant.

Richard L. Murphy, Cedar Rapids, Iowa, for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and WEBB *, District Judge.

WEBB, District Judge.

Kevin Meggers appeals from the five convictions and five sentences entered against him after a jury found him guilty of various title 21 offenses. Meggers was sentenced on Count 1, possession with the intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, to a term of twenty years in prison. Meggers' conviction on Counts 2 and 3, use of a communication facility in facilitating the commission of a felony, 21 U.S.C. §§ 843(b) and 843(c), resulted in a term of four years in prison on each of the counts. Meggers was also sentenced to a five year special parole term on Count 1. The sentences imposed on Counts 1, 2, and 3 were ordered to be served concurrently with each other and with the sentences on Counts 4 and 5 imposed under the Sentencing Reform Act.

The sentencing on Counts 4 and 5 reflected violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession with the intent to distribute cocaine, as well as 21 U.S.C. § 846, conspiracy to distribute and possess with the intent to distribute marijuana and cocaine. Meggers was sentenced to 340 months on Count 5 and 240 months on Count 4. Again the guideline sentences were to run concurrently with each other and concurrently with the pre-guideline sentences.

Meggers first argues that the convictions should be reversed and a new trial ordered because the trial court [1] erred in admitting the out of court statements of Joe Zalesky and Jeff Wiley pursuant to 801(d)(2)(E) of the Federal Rules of Evidence. Meggers also argues that the trial court erred when it failed to allow inquiry of a police officer regarding his conversation with a sequestered witness. Meggers alternatively argues that the sentences imposed under the guidelines are in error because the court failed to consider a memorandum which could have impeached trial testimony on the issue of quantity. Meggers also argues for resentencing due to the disparity between his sentence and that of a co-conspirator. We affirm the district court action.

## FACTS

Evidence produced at trial established Meggers' involvement in the use and distribution of marijuana from at least 1976 through 1987. The evidence at trial consisted primarily of the testimony of individuals who had been involved with Meggers in the distribution conspiracy. Fourteen of the seventeen government witnesses had had drug-related dealings or contact with Meggers. Pen register records were admitted which corroborated testimony regarding Meggers' contacts with others involved in the use and distribution of controlled substances. Tape recordings of conversations between Meggers and co-con-

* The HONORABLE RODNEY S. WEBB, United States District Judge for the District of North Dakota, Sitting by Designation.

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

spirators were admitted to further indicate Meggers' involvement with the long running distribution chain.

The government's evidence established that Meggers, Joe Newland, Bart Hoffman and Chris Mottinger had been friends for years. Newland and Hoffman moved to Arizona and Florida respectively. They developed sources for controlled substances in their new locations and became suppliers of those substances for their friends in Iowa, including Meggers. Meggers distributed the controlled substances to numerous individuals.

As part of their plea agreements, Hoffman and Newland assisted authorities by engaging in recorded conversations with Meggers. The testimony of Hoffman and Newland indicated that this association resulted in the distribution of tens of kilograms of cocaine as well as thousands of pounds of marijuana in Iowa.

## I. STATEMENTS OF JOE ZALESKY AND JEFF WILEY

### A. Statement of Joe Zalesky

■ Meggers maintains that the out of court statements made by Joe Zalesky included in the testimony of Zalesky's girl friend, Julie Dusterhoft, were inadmissible because they were not supported by independent evidence of a conspiracy nor made in the furtherance of the conspiracy. The specific testimony objected to is the following:

Q. And do you know, based upon your observations when you lived with Joe Zalesky, whether or not he was involved in any drug-relating activity with the defendant and Joe Newland?

A. From what Joe has told me, yes.

[Objection omitted]

THE COURT: You may proceed.

A. Okay, I can't, you know, recall exact conversations, but it was just, you know—I don't know how to explain it. You know, Joe had told me that he has gotten cocaine from him.

Q. (By Mr. Murphy) From who?

A. From Kevin.

Trial Transcript at 660–661.

The Federal Rules of Evidence direct when co-conspirator statements are not to be considered hearsay. Fed.R.Evid. 801(d)(2)(E). The rule states:

(d) Statements which are not hearsay. A statement is not hearsay if—

(2) Admission by party-opponent. The statement is offered against a party and is ... (E) a statement by a co-conspirator of a party during the course and in the furtherance of the conspiracy.

Meggers claims that Zalesky's out of court statements cannot be construed to have been made in furtherance of the conspiracy. This court has held that a statement identifying a co-conspirator's source for cocaine has been deemed to be a statement made "in furtherance" of the conspiracy. *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir.1988). The Zalesky statement, reiterated by Dusterhoft, clearly identifies Meggers as Zalesky's drug source. Thus, the statement was clearly made in furtherance of the conspiracy.

This court has also determined that an out of court statement is not hearsay and is admissible if on independent evidence the court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and defendant were parties. *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978). In *Bourjaily v. United States*, the Supreme Court held that trial courts could consider the hearsay statements themselves in making the admissibility determinations. *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987). The court indicated that although an individual statement or piece of evidence alone may be insufficient to prove a point, in cumulation with other statements or evidence, it may become probative. *Id.* at 179–80, 107 S.Ct. at 2780–81.

Upon review this court will not reverse the district court's determination unless it is clearly erroneous. *Meeks* at 1203. In addition, the court will view the evidence in the light most favorable to the govern-

ment. *United States v. Baker*, 855 F.2d 1353, 1359 (8th Cir.1988).

Mindful of the appropriate standards of review, the court determines that Zalesky's statements were properly admitted. The statements indicate Zalesky's involvement with Meggers for the purpose of obtaining cocaine. Meggers suggests that since Dusterhoft did not see the cocaine change hands, it could have come from a source other than Meggers. That possibility could have been, but was not, explored on cross examination.

Independent evidence of a conspiracy to distribute cocaine also supports the admission of Zalesky's statement. Dusterhoft knew that Zalesky obtained drugs from Meggers because he would leave Meggers' residence with drugs in his possession when he had possessed no drugs upon entering the residence. Dusterhoft saw pounds of marijuana at Meggers' residence. Further, Joe Newland testified to his ten year association with Meggers through which Newland supplied cocaine and marijuana to Meggers for ultimate resale. Newland knew many of Meggers' customers just as Meggers knew of Newland's drug sources. Our review leads us to conclude that the trial court properly admitted Zalesky's statements pursuant to Fed.R.Evid. 801(d)(2)(E).

### B. Statements of Jeff Wiley

■ Meggers maintains that Government Exhibit 10, a tape recorded conversation between Meggers, Joe Newland and Jeff Wiley, was improperly admitted over his hearsay objection. Meggers claims that the only independent evidence indicating Wiley was part of the alleged conspiracy was "Newland's hesitating testimony from which only ambiguous inferences can be drawn." Meggers maintains that no proof, independent of the recorded statements of Jeff Wiley, connects Wiley to Meggers as a drug source.

The conversation contained in Government Exhibit 10 can be found at pages 149–191 of the trial transcript. Evidence of Wiley's involvement exists within those pages beyond any statements made by him

specifically. Meggers states that Jeff Wiley is one of his drug sources. Meggers also indicates Wiley's involvement by telling Newland that he intends to get money from Wiley and that Wiley had been a money source in such situations before.

The trial court conditionally admitted Government Exhibit 10 when it was offered and made its *Bell* rulings at the close of the evidence. At that time the trial court stated:

> There was an objection made to, I think it's Exhibit 10, which is a tape recording that involves some comments made by Wiley that gave me some concern. However, I believe the other evidence showed Wiley to be involved in the distribution enterprise, and I'm also satisfied that some of his comments, while reported on the tape may not have been classic co-conspirator hearsay, but neither were they, in my assessment, offered for the truth of the matter asserted. They're just asides during a conversation that don't bear upon the issues of the—of the trial, and that I think is a product of the technology. If a witness were testifying concerning what conversation transpired at that time, the witness wouldn't repeat asides that really didn't—for instance, the ball games, who's playing who tonight, and the like, but the tape recorder picks up everything that's said. And so we get that reproduced, but when it came down to deciding whether or not the statements offered were made by a co-conspirator during the course of the conspiracy in furtherance of the conspiracy, using the statements themselves, as I'm permitted to do under *Bourjaily,* I find that they fit the admissibility category reserved in *Bell* and so the conditional admission is now made a formal admission of those co-conspirator hearsay statements.

T.Tr. 816–817.

Upon review of the Wiley statements at issue and the trial court's ruling, this court is convinced that the evidence was properly admitted. Wiley, through Meggers' statements as well as his own, was shown to be knowledgeable of and connected to the

drug distribution enterprise. The statements in Exhibit 10 are admissible under the co-conspirator exception found in Fed. R.Evid. 801(d)(2)(E).

## II. FEDERAL AGENT'S CONVERSATION WITH SEQUESTERED WITNESS

██ Meggers claimed the trial court abused its discretion when it denied his request to question an agent who had been observed talking with an upcoming witness. Mr. Hunsacker's presence and behavior were explained by the government attorney. Mr. Hunsacker, was a "rookie" FBI agent, observing the trial as part of his training. It was suggested that Meggers' counsel question the upcoming witness, Mr. Shelton, as to the content of his conversation with Hunsacker. The trial court told Meggers' counsel that, should Mr. Shelton take the stand, he could be examined as to any contact he may have had with any of the trial's observers and whether he was told anything about prior testimony. Further, Agent Hunsacker was to be reminded of his obligation not to disclose one witness's testimony to a prospective witness.

Meggers has failed to show that the complained of conversation was a punishable violation of the sequestration order. The trial court allowed defense counsel the opportunity to question the witness, but counsel chose not to do so. It is within the trial court's discretion to fashion an appropriate remedy for a violation of a sequestration order. *United States v. Smith*, 578 F.2d 1227, 1235 (8th Cir.1978). Meggers made no showing of such a violation. Therefore, this court must affirm the trial court.

## III. MEMORANDUM AT SENTENCING

██ Meggers claims that the trial court incorrectly failed to consider a proffered memorandum which could have impeached the trial testimony considered at sentencing. Meggers characterizes this failure as a "refusal" to admit the memorandum into evidence as well as a refusal to consider it.

The memorandum at issue was read to the court by government counsel because it was a government generated document. Defense counsel's purpose in submitting the information contained in the memorandum was to show that Meggers could not be held accountable for three "dusty football" kilos of cocaine because there was no proof in the memo or anywhere that Mr. Meggers knew of those cocaine quantities. Meggers believes that, had the court considered the memo and discounted the credibility of Newland and Hoffman as to the three dusty footballs, his offense level and sentence would be reduced.

Meggers' claim is unpersuasive. The memo itself, though read from and referred to, was never marked for identification nor formally moved into evidence. That procedural mistake aside, nothing in the sentencing transcript indicates the district court did not consider it. Rather, the record reflects the district court's conclusion that Newland's testimony was more persuasive than the memo.

Meggers was held accountable for 20 kilograms of cocaine. Sentencing Transcript 84. That amount was based on his own drug activities and those attributable to him through his co-conspirators. The 20 kilogram figure placed Meggers within the quantity requirement of offense level 34. The quantity range of level 34 is 15–50 kilograms of cocaine. If the district court had credited the memo and removed the three dusty footballs from Meggers' total, the amount remaining would still be within the level 34 range. Furthermore, the district court's calculation did not include the marijuana for which Meggers was responsible. The addition of the marijuana quantities would have counterbalanced the three kilogram reduction.

The court concludes that any error which may have occurred in regard to the failure to admit the memo was harmless error. The sentence imposed by the district court is affirmed.

## IV. SENTENCING DISPARITY

██ Meggers claims that his rights to procedural and substantive due process were violated when the trial court refused to consider lesser sentences for him. Meg-

gers was lower in the conspiracy hierarchy than co-conspirator Eric Wayne, yet, under the guidelines, Meggers was sentenced to more time.

The disparity between the guideline sentences is easily explained in part by Meggers' more extensive criminal history. Beyond that, Meggers received an upward adjustment for obstruction of justice. Wayne, however, had a criminal history category of I. Also, in addition to his guideline sentence, Wayne received a forty year nonguideline sentence and a $200,000 fine.

Meggers has not shown a clear abuse of discretion in sentencing by the trial court nor has he shown a constitutional violation which would warrant the sentences being set aside. *United States v. Garcia*, 785 F.2d 214, 228 (8th Cir.1986). Mere variation in sentences among co-conspirators is not alone a sufficient basis which would require resentencing. *Id.* Thus, the sentence fashioned by the trial court is affirmed.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's holdings that the district court properly admitted the out of court statements of Joe Zalesky and Jeff Wiley, that Meggers failed to show a punishable violation of the sequestration order, and that the district court did not abuse its discretion in sentencing Meggers to a term of imprisonment longer than that received by co-conspirator Eric Wayne. My sole concerns are with the method used to determine relevant conduct for purposes of sentencing and the government's failure to charge Meggers with all drug quantities of which it had knowledge at the time of the indictment.

The district court gave substantial weight to the presentence investigation report (PSI) in determining the amount of cocaine to be included in Meggers' base offense level. Such a practice is inappropriate when a full trial at which the sentencing judge presided has taken place. The trial court, having heard all the testimony, is best able to judge its credibility

and should rely on its own recollection of that testimony to determine the defendant's base offense level. The probation officer who prepares the PSI has neither the time nor the resources to conduct an independent investigation, and frequently relies solely on information obtained from the government's offense conduct statement and trial notes in compiling the PSI.

In this case, for example, the prosecutor twice apologized for inaccurately paraphrased trial testimony and a typographical error in the PSI that resulted from mistakes in the prosecutor's notes and offense conduct statement. A thorough review of the record nonetheless persuades me that the trial testimony fully supports the district court's determination of the drug quantities relevant to Meggers' sentence.

Notwithstanding the Guidelines and the opinions of this court to the contrary, however, I continue to believe that it is a violation of due process to sentence a defendant for offense conduct which was known to the prosecution before trial but was not charged in the indictment. Here, counts four and five of the indictment charged Meggers with possession with intent to distribute and distribution of five or more kilograms plus four ounces of cocaine. Meggers' base offense level was calculated using twenty kilograms of cocaine. This use increased Meggers' sentence by more than five years of real time (from 275 to 340 months). The twenty kilogram quantity arose from the testimony of co-conspirators Newland and Hoffman, both of whom had been cooperating with the government for some time prior to Meggers' indictment. The government's failure to charge this quantity in the indictment deprived Meggers, with respect to the amounts not charged but included at sentencing, of the procedural protections guaranteed by the Constitution to a defendant in a criminal trial. It does little good to give a defendant the benefits of the Constitution before and during trial only to ignore them at the critical stage at which a defendant has his sentence significantly increased by conduct

neither charged nor proved beyond a reasonable doubt before a jury.