# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-1657

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Roderick Maxie, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: September 22, 2008
Filed: September 26, 2008

_____

Before RILEY, HANSEN, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Roderick Maxie was charged with possession with intent to distribute more than five grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The evidence presented at trial indicated that two police detectives first observed Maxie climb through the locked gate of a chain link fence surrounding a vacant lot south of 4319 College Avenue in St. Louis, Missouri.

Maxie then walked to the front passenger side of a Ford Explorer parked at the back of the lot. The detectives testified that they observed Maxie remove a handgun from his waistband and place it underneath the floor mat inside the vehicle. He then walked onto the 4300 block of College Avenue but began to run when he noticed the detectives approaching him from behind. When they caught up with Maxie, they observed him trying to swallow some items that proved to be seven individually wrapped packages of crack cocaine, totaling 1.8 grams, and they found $513 on his person. After apprehending Maxie, they returned to the Ford Explorer, where the detectives uncovered a .9mm caliber handgun and 5.93 grams of crack.

Maxie took the stand and admitted possessing the packages of crack found in his mouth but denied knowledge of the firearm in the Ford Explorer. The jury convicted him on all three counts, and he seeks reversal on appeal, alleging that the district court[1] committed error on three grounds. After a careful review, we affirm.

First, Maxie claims trial court error in the questioning of a juror during the jury's deliberations. On the first day of deliberations, the jury indicated it was deadlocked on Count 1 but later asked to see the trial exhibits and then requested to be permitted to resume its deliberations the next day. The next day, the Government sought removal of one juror based upon her alleged failure to disclose a number of arrests, a pending felony charge against her, and the fact that her brother may have had a prior conviction. Maxie resisted the summary removal of this juror and requested that the juror first be questioned by the district court. The district court then held a hearing, questioned the juror in the presence of both parties, and determined that she had in fact not made misrepresentations. The district court denied the Government's motion and chastised the Government for checking into the background of this juror only after being apprised of a possible deadlock.

---

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

Maxie now argues for the first time that the district court's questioning of this juror coerced her into voting for a guilty verdict. A criminal defendant being tried by a jury is entitled to that jury's uncoerced verdict. United States v. Hiland, 909 F.2d 1114, 1137 (8th Cir. 1990). Because Maxie neither objected to the court's questioning of this juror nor sought to remove the juror either prior to or following the questioning, we review for plain error. Fed. R. Crim. P. 52(b). See United States v. Olano, 507 U.S. 725, 732 (1993). The record provides no basis other than speculation for finding that this juror was coerced into joining a guilty verdict. The questioning did not in any manner reference the jury's possible deadlock in this case or inquire as to this juror's opinion on the case. Cf. Amos v. United States, 496 F.2d 1269, 1272-73 (8th Cir.) (noting that the trial court's actions may be deemed coercive if the court requires a jury to reveal its decision before any verdict has been returned), cert. denied, 419 U.S. 896 (1974). It is significant that defense counsel failed to object to the procedure used by the court. See id. at 1273 (noting the "lack of objection by counsel [to the court's procedures in questioning the juror] permits an inference that the procedures utilized did not appear coercive at the time"); see also Hiland, 909 F.2d at 1137-38. Moreover, defense counsel affirmatively requested that the court question the juror in this manner thus inviting the error of which he now complains. See United States v. Mahler, 141 F.3d 811, 815 (8th Cir.) ("The doctrine of invited error applies when the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action." (internal marks omitted)), cert. denied, 525 U.S. 885 (1998). It is fundamental that there can be no reversible error where the defendant invited the alleged error. See United States v. Noe, 411 F.3d 878, 886 (8th Cir. 2005), cert. denied, 546 U.S. 892 (2005), and cert. denied, 546 U.S. 1201 (2006). We see no error, let alone plain error. See Olano, 507 U.S. at 732 (to be reversible, plain error must result in a miscarriage of justice or "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" (internal marks omitted)).

Second, Maxie argues that the district court abused its discretion by not permitting the jury to visit the crime scene. This is a "highly discretionary" decision. United States v. Triplett, 195 F.3d 990, 999 (8th Cir. 1999), cert. denied, 529 U.S. 1094 (2000). Although defense counsel urged the district court to grant the jury's request to visit the scene, he lodged no objection to the district court's ultimate decision. The district court expressed concern that the scene could appear quite different than it appeared at the time of the crime and that jurors could be improperly influenced by other factors at such a viewing. We note that the record includes several photographs of the scene, a diagram, and the testimony and extensive cross-examination of the two detectives who were present at the scene. We cannot say that the district court abused its broad discretion by denying the jury's request to view the scene on this record, and it certainly did not result in a miscarriage of justice. See id. (noting the presence of photographs, diagrams, and witness testimony regarding the circumstances and conditions at the relevant time supported the district court's discretionary determination to deny an on-site viewing).

Third, Maxie contends that the district court violated his Sixth Amendment Confrontation Clause rights by improperly restricting his cross-examination of the two arresting detectives. Defense counsel attempted to inquire into whether the detectives had been interested in searching 4319 College Avenue, where Maxie and his girlfriend apparently lived and which was adjacent to the lot where the Ford Explorer was parked. The district court sustained the prosecution's relevance objection and limited the inquiry to the searches that resulted in evidence used against Maxie. Defense counsel made no attempt at trial to demonstrate the relevance of this inquiry or lodge a Confrontation Clause objection. On appeal, he now asserts for the first time that the inquiry was relevant to expose a bias or motive for framing him and that his confrontation rights were improperly restricted. Because this justification is offered for the first time on appeal, we again review for plain error. See United States v. Garcia, 785 F.2d 214, 220 (8th Cir.), cert. denied, 475 U.S. 1143 (1986) (reviewing

for plain error the district court's rulings limiting cross-examination where no timely objection was made at trial).

While the exposure of a witness's motivation is a proper function of cross-examination as guaranteed by the Confrontation Clause, trial courts nevertheless retain "wide latitude" to impose reasonable limits based, among other things, on the relevance of the inquiry. See Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986); United States v. Lightfoot, 483 F.3d 876, 879 (8th Cir.), cert. denied, 128 S. Ct. 682 (2007). Our review of the record satisfies us that the decision to limit cross-examination to the searches that resulted in evidence used against Maxie at trial was within the district court's discretion and did not result in a miscarriage of justice or seriously affect the fairness of the proceedings. Garcia, 785 F.2d at 220.

Accordingly, we affirm the judgment of the district court.

_____