UNITED STATES of America, Appellee,

v.

Leo Eugene STRINI, Appellant.

No. 81–1161.

United States Court of Appeals,
Eighth Circuit.

Submitted June 19, 1981.

Decided Sept. 9, 1981.

Rehearing and Rehearing En Banc Denied
Oct. 23, 1981.

**594**

Jerry D. Patchen, Gerald M. Birnberg (argued), Houston, Tex., for appellant.

Roxanne Barton Conlin, U. S. Atty., Ronald M. Kayser, Amanda M. Dorr (argued) Asst. U. S. Attys., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant Leo Strini appeals his conviction[1] under 21 U.S.C. §§ 812; 841(a)(1); & 841(b)(1)(A) for possession with intent to distribute approximately thirteen ounces of cocaine. Strini entered into a stipulation of facts with the government and the matter was submitted to the court for decision. The sole issue presented on appeal is whether the district court erred in failing to suppress evidence seized pursuant to the execution of a search warrant on the grounds that the affidavit submitted in support of the warrant contained deliberate falsehoods

by the affiant of such magnitude that there was not enough truthful information remaining to establish probable cause. We affirm the district court.

On August 28, 1980, federal and state agents searched the home of Terry Bregar in Jamaica, Iowa, in culmination of an approximately two-year long investigation. Drugs were seized and Bregar was arrested. On September 3, following several unsuccessful attempts to unravel Bregar's activities, Bregar produced names and places relating to his involvement with illegal drug activities, including the name of defendant Leo Strini as his source of supply for cocaine and marijuana. The agents verified Bregar's statements with information obtained independently.

By September 24, 1980, Bregar agreed to become an informant. Thereafter, in exchange for Bregar's aid as an informant, his testimony before the grand jury and his assistance in apprehending violators, the prosecution agreed to give Bregar immunity and entered into a plea agreement with him on pending charges.

Bregar initially contacted defendant Strini on September 10, 1980. On September 24, Strini offered to sell Bregar twelve to thirteen ounces of cocaine. Bregar and Strini agreed the exchange would occur at the Des Moines, Iowa, airport. Strini said he would be flying in from Denver, Colorado, that night. Law enforcement officers monitored the telephone calls of September 10 and 24, 1980, between Bregar and defendant Strini.

Using the information he had gathered from his investigation and the information supplied by Bregar, Federal Agent Overbaugh drafted an affidavit to present to a judge the evening of September 24, 1980, in order to obtain a search warrant. The agent was concerned for Bregar's safety and his effectiveness in other on-going investigations should his identity be revealed. The agent drafted the affidavit so that Bregar was characterized as a "third unnamed confidential informant." The infor-

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, presiding, imposed a sentence of four years imprisonment to be followed by three years parole.

mation given by this "third informant" (Bregar) related to transactions between Bregar and Strini. For example, the affidavit recited that affiant was contacted by a third reliable confidential informant who related that defendant Strini was flying to Des Moines on September 24, 1980, with a large quantity of cocaine for Bregar. The affidavit was presented to the United States Attorney late that afternoon.

Later on September 24, Agent Overbaugh delivered the proposed search warrant and accompanying affidavit to Judge William Stuart who issued the warrant between 8:00 and 8:30 on that evening. Judge Stuart did not inquire into the identity of the "informant" and the agent did not volunteer it. After Strini disembarked from the 10:00 p. m. flight from Denver, four agents met him at the Des Moines airport; executed the warrant; searched him, his luggage and his shoulder bag; and seized approximately thirteen ounces of cocaine. Strini was arrested and on September 30, the grand jury returned an indictment on one count of possession with intent to distribute a controlled substance.

On November 21, Strini entered a plea of not guilty and on December 2, he filed a motion to suppress evidence on the grounds that the warrant pursuant to which the evidence was seized was faulty. The government resisted the motion. On December 22, Judge Harold D. Vietor held a hearing on the motion and subsequently denied it.

On the date set for trial, December 29, Strini waived his right to a jury trial and, with the government, entered into a stipulation of facts to be offered into evidence. The government's exhibits 1 through 14 were also stipulated into evidence subject to defendant's objections and motion to suppress as reserved in the stipulation and in the "trial objection." Defendant offered no evidence. The matter was then submitted to the court and the court entered a finding of guilty.

In denying the motion to suppress, the district court held that in order to justify suppression a statement must be false or recklessly made in regard to a substantive matter. Judge Vietor concluded such was not true in the present case.

> [This] falsity does nothing more than create what I will call a fictional conduit, a conduit through which the hard information was allegedly passed on to the affiant, the law enforcement officer who was the affiant on the search warrant.
>
> This falsity of creating a fictional conduit does not go to the falsity of the substantive or the hard information provided. There still was a confidential informant.
>
> *     *     *     *     *     *
>
> True, there was a masking over to try to shield him from being identified as the confidential informant, and that was done by this device of making it appear as if there were some third-person conduit, but none of that goes to the substance of the information provided.

We are satisfied that the district court's findings and conclusions are warranted by the record.[2]

Strini appeals his conviction claiming the search warrant was invalid because the affidavit in support of the warrant contained a deliberate falsehood by not disclosing Bregar's name and characterizing him instead as a "third confidential informant." Strini concludes that when that material was removed, there was insufficient remaining content to support a finding of probable cause. As a result, the fruits of the search should not have been admitted into evidence.

The government contends that there was no deliberate falsehood because there was a confidential informant—Terry Bregar. The government first publicly revealed his identity in the government's resistence to Strini's motion to suppress. The govern-

2. The court indicated that its ruling did "not 'sanction' the way this was handled by the Government." We emphatically agree that the government should have informed the court at the time the warrant was issued that the third informant was Mr. Bregar. Although we do not approve the government's conduct, like the district court, we are not prepared to say that in this case suppression is required.

ment argues that the affidavit was drafted to conceal Bregar's identity as the third confidential informant in order to protect him and to assist the government in using Bregar in on-going investigations. It insists that there was no intent to deceive or mislead the court.

The sole issue presented on appeal is whether the characterization of Bregar in the affidavit [3] as a "third confidential informant" constituted a deliberate falsehood requiring the "assertions" attributed to that informant to be set aside, thus mandating an examination of the remaining information to determine the existence of probable cause.

The standard to be applied in this case was set out by the United States Supreme

**3.** AFFIDAVIT

Affiant has been employed for ten years as a Special Agent of the Federal Drug Enforcement Administration, and is currently assigned to DEA's Des Moines, Iowa office.

During the past two years, the DEA has been conducting an investigation regarding the trafficking of controlled substances by Terry W. Bregar, of Jamaica, Iowa.

During the investigation, two reliable confidential informants advised this affiant that Terry Bregar obtained his cocaine and marijuana from an individual named Lee (LNU) in Fort Lauderdale, Florida. This information was obtained by these confidential informants through personal observation and contact with both Terry W. Bregar and with Lee (LNU) and through observation of drug transactions between the two during 1979. These two informants provided this information at different times and independent of one another. Much of the information they supplied regarding Terry W. Bregar was corroborated by other witnesses interviewed by this affiant, by independent investigation, and by surveillance. One of the two informants has provided information in the past which led to the indictment and conviction of five major drug distributors in another jurisdiction. None of the information provided by these two independent, confidential informants was found to be untrue.

During the past two years, toll call records for the telephones of Terry W. Bregar have been subpoenaed. Analysis of these records by the affiant reveal frequent telephone calls to Fort Lauderdale, Florida, telephone numbers 305–486–0399, and 305–484–2871. These telephone numbers are listed to Chera Weatherford Lutz, of Fort Lauderdale, Florida. A check of Fort Lauderdale telephone listings indicates that no telephone numbers are listed to Lee or Leo Strini.

On August 28, 1980 this affiant was present at the residence of Terry W. Bregar of Jamaica, Iowa during the execution of a state search warrant relating to a stolen vehicle investigation. This affiant observed at that time, in plain sight, a suitcase with an identification tag bearing the name of Leo Strini, of Fort Lauderdale, Florida.

On 9/24/80, this affiant was contacted by a third reliable confidential informant, who stated that he had received information that Leo Strini a/k/a Lee Strini, Fort Lauderdale, Florida was currently in Aspen, Colorado and was preparing to fly by commercial airlines to Des Moines, Iowa on 9/24/80 with a large quantity of cocaine for Terry W. Bregar. On 9/24/80, this affiant was advised by an employee of the Plumtree Inn in Aspen, Colorado that Leo Strini was a guest at that motel.

This informant advised that Strini was Bregar's source of supply in Florida and was married to a Chera (LNU). This informant stated that Strini would transport the cocaine to Des Moines concealed on his person, in his luggage, or on the person of his wife, Chera, or in her luggage.

This informant has provided information on three separate occasions. The majority of the information provided to this affiant has been corroborated by independent investigation, surveillance and/or other informants and witnesses. No information provided by the third informant has been found to be untrue. In addition, this informant has provided information to the state authorities which has resulted in the seizure of stolen property.

The third informant obtained the information which he provided this affiant through personal contact with Bregar and through personal observation.

The third confidential informant stated that Bregar described Leo Strini as being approximately 40 years old, approximately 6 feet tall with a dark complexion and very well dressed. The third confidential informant stated that Chera (LNU) is approximately 35 years of age, approximately 5'7" to 5'9" weighing 120 to 130 pounds with dark hair. The affiant has obtained information from the Florida Motor Vehicle Division which describes Chera Weatherford Lutz as 36 years of age, 5'7" and weighing 120 pounds and having dark hair.

The only remaining flight from Denver, Colorado to Des Moines, Iowa on 9/24/80 is United Airlines flight # 490 which arrives at 10:02 p. m.

s/ Alvin C. Overbaugh
ALVIN C. OVERBAUGH
SA, DEA

Sworn to before me and subscribed in my presence, September 24, 1980.

s/ W. Stuart
JUDGE

Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).[4] The Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

■ We affirm the district court's finding that the failure to disclose the identity was not a false statement within the contemplation of *Franks, supra.* While we do not condone the action, this was not an attempt to enhance the contents of the affidavit submitted in support of the search warrant. Rather, it was a measure used to mask the identity of the informant which was necessary for his safety and for his usefulness in on-going investigations.

We can therefore distinguish cases such as *King v. United States*, 282 F.2d 398, 399–400 (4th Cir. 1960), wherein the purported affiant did not, in fact, make the affidavit. Our present case is unlike *King* because here there was no false name of the informant given nor, for that matter, was there any intent to deceive the judge when submitting the affidavit.

■ Furthermore, even if the statement was a "false statement" within the contemplation of *Franks, supra*, the district court did not err in concluding the evidence should not be suppressed. The *Franks* rule requires that the perjured information be set aside. Then, the remainder of the information can be examined to determine whether there is probable cause. If there is probable cause, the search warrant will not be invalid.

In the present case, the falsity, if any existed, related to the identity of the informant. Assuming, then, that we would set aside the identity of the informant, we would be faced with the question of whether there was sufficient information remaining in the affidavit to establish probable cause. In essence, what would remain is the typical situation of an affiant reciting information given by an unnamed informant. Our case is rendered more unusual because the informant happens to be Bregar, who is also the source of the information relied on.

To ascertain whether the information is sufficiently reliable to establish probable cause, the court must apply the tests of *Spinelli v. United States*, 393 U.S. 410, 415–18, 89 S.Ct. 584, 588–90, 21 L.Ed.2d 637

---

4. In *United States v. Marihart*, 492 F.2d 897 (8th Cir. 1974), a case that preceded *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), we held that an affidavit would be invalid under the following circumstances. First, evidence should be suppressed if the court finds "that the government agent was either recklessly or intentionally untruthful" with respect to a material matter. Second, if "deliberate government perjury" is shown, "the court need not inquire as to the materiality of the perjury."

In spite of the broad language of the *Marihart* case, the concealment of Bregar's identity does not fall within its dictates concerning perjured information. First, we do not discern any deliberate attempt to deceive the court. Rather, the affiant sought only to mask the informant's name from public disclosure. Second, the cases following *Marihart* make it clear that not all failures to disclose information constitute a violation of *Marihart*. *United States v. Abramson*, 553 F.2d 1164, 1168–69 (8th Cir. 1977); *United States v. Collins*, 549 F.2d 557, 561 (8th Cir. 1977); *United States v. Davis*, 557 F.2d 1239, 1248–49 (8th Cir. 1977); *United States v. Lyon*, 567 F.2d 777, 781–82 (8th Cir. 1977). In *United States v. House*, 604 F.2d 1135, 1141 (8th Cir. 1979), our court applied a rule requiring any misrepresentation to be material or otherwise necessary to a finding of probable cause before it would justify invalidating the affidavit and the warrant.

(1969); *Aguilar v. Texas*, 378 U.S. 108, 111–16, 84 S.Ct. 1509, 1512–15, 12 L.Ed.2d 723 (1964); and *Draper v. United States*, 358 U.S. 307, 308–14, 79 S.Ct. 329, 330–34, 3 L.Ed.2d 327 (1959). *See United States v. Button*, 653 F.2d 319 (8th Cir. 1981).

Under the *Aguilar* test, the affidavit must set out "underlying circumstances" necessary to enable the magistrate to independently evaluate the validity of the informant's conclusions and some of the underlying circumstances from which the officer concluded that the informant was "credible" or his information "reliable."

The *Aguilar* test was further refined by *Spinelli v. United States, supra*, 393 U.S. at 416, 89 S.Ct. at 589, which held:

> In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

*Id.*

The detail which the affidavit provided concerning Strini's personal appearance, his presence in Aspen, Colorado (telephonically confirmed by affiant, Agent Overbaugh), and the flight Strini would arrive on from Denver, Colorado, satisfied one prong of the *Spinelli-Aguilar* test. In addition, the affidavit states that the informant (Bregar) had been reliable in the past; informant had provided information on three separate occasions and the majority of it had been corroborated; and informant had provided information to state authorities which resulted in the seizure of stolen property. After reviewing the evidence, the district court found these assertions in the affidavit to be substantially true. We agree that the record supports the district court's findings. Therefore, both prongs of the *Aguilar* test have been satisfied and the information

supplied in the search warrant was sufficient to establish probable cause.

We emphasize that we do not condone the masking of the identity of the informant to the court. We cannot sanction any attempt to mislead the court. We point out that there are alternative procedures open to the government to protect the name of an informant and they should be used in the future.

In spite of our dislike of the procedure used in this case, we find the district court did not err in denying the motion to suppress for failure to have a valid warrant. Appellant suffered no prejudice due to the masking of informant's true identity. The masking of the identity of the informant weakened rather than strengthened the showing of probable cause to the court.[5]

Affirmed.

---

**5.** *Compare, United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).