**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric Lamar FALLS, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gregory Donnell HEDGEWOOD,**
**also known as Gregory Donnell**
**Hegwood, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerald Rey BAILEY, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony Wells JOHNSON,**
**Defendant–Appellant.**

No. 93–3577, 93–3586, 93–3587 and 93–3644.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1994.

Decided Sept. 8, 1994.

Ronald L. Wheeler, Des Moines, IA, argued (Rick L. Olson, D. William Thomas, and Timothy Duffy, on the brief), for appellants.

Ronald M. Kayser, Des Moines, IA, argued, for appellee.

Before HANSEN, Circuit Judge, HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

HANSEN, Circuit Judge.

Eric Falls, Gregory Hedgewood, Gerald Bailey, and Anthony Johnson (the defendants) each entered conditional pleas of guilty to multiple drug-related charges. The defendants appeal the district court's [1] denial of two pretrial motions in which they claimed that the government illegally engaged in intercepting oral communications and in conducting nonaudio video surveillance of an apartment that they occupied. We affirm.

## I. Background

On January 13, 1993, during the course of a criminal investigation of suspected drug trafficking activity by the defendants, the government applied to the Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa, for an order authorizing the government to intercept (i.e., "bug") oral communications in an apartment at 4108 Hubbell Ave-

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

nue in Des Moines, Iowa, pursuant to 18 U.S.C. § 2518. The government also applied, relying on Federal Rule of Criminal Procedure 41(b), for an order authorizing nonaudio closed circuit television (video) surveillance of portions of the interior of the same apartment. The government supported each application with the affidavit of Special Agent James P. Donlan of the Federal Bureau of Investigation.

The affidavit named Gregory Hedgewood, Eric Falls, Timothy Earl Betts, Thelma Sarah Wyant, and Scott Turner as individuals whose oral and nonverbal communications would be intercepted. The affidavit also referred to a cooperating witness who was identified as C/W–1 to mask the witness's identity. The affidavit stated that C/W–1 was a cocaine trafficker and that he/she had been inside the apartment to purchase cocaine but that he/she was not privy to the defendants' sources, the extent of the operation, or how the organization distributed the proceeds. The affidavit also stated that C/W–1's access to the apartment was limited out of fear for his/her personal safety. C/W–1 was actually Thelma Sarah Wyant who was named in the affidavit as one of the suspects, but neither the affidavit nor the affiant informed Chief Judge Wolle of this fact. The district court granted both applications, and from January 13 through January 29, 1993, the government engaged in electronic oral surveillance and silent video surveillance of the apartment. On January 29, based in part upon information gathered during the surveillance, the government sought and obtained a search warrant for the premises. During the search, authorities seized powder cocaine, cocaine base, and a .45 caliber semi-automatic pistol.

In June 1993, the grand jury returned a superseding indictment charging the defendants with conspiracy to distribute cocaine, engaging in a continuing criminal enterprise, engaging in financial transactions with the proceeds of drug distribution, use of a communication facility to facilitate the distribution of cocaine or cocaine base, interstate travel to distribute cocaine base, distribution of cocaine base, possession of cocaine base with intent to distribute, and carrying a firearm during a drug trafficking crime. The defendants entered pleas of not guilty at arraignment and filed pretrial motions.

The defendants moved to suppress the evidence obtained through the oral and silent video surveillance. The defendants asserted that the district court did not have the power to authorize silent video surveillance. They also argued that the government intentionally misled the district court through false information in the affidavit, that there was no need for electronic surveillance because normal investigative procedures would have been sufficient, and that the length of the surveillance exceeded the term authorized in the orders. The defendants moved to quash the search warrant, contending that it was unlawful as fruit of the poisonous tree because it was based upon information obtained through the allegedly illegal surveillance.

The district court, Judge Vietor presiding, held a hearing on the pretrial motions. Special Agent Donlan, the sole witness, testified concerning the accuracy of the information in his affidavit and the need for the oral and video surveillance. The district court overruled the motion to suppress and the motion to quash the search warrant, specifically finding that "[n]o part of [the affidavit] constituted a deliberate false statement." (Mot. to Suppress Tr. at 82.) The defendants then entered pleas of guilty conditioned on their right to appeal the adverse rulings on their pretrial motions. The district court sentenced Eric Falls to 300 months of imprisonment, Gregory Hedgewood received 420 months of imprisonment, and Gerald Bailey received 384 months of imprisonment, each to be followed by a 10–year term of supervised release. Anthony Johnson was sentenced to 270 months of imprisonment to be followed by 5 years of supervised release. The defendants appeal the adverse rulings on their motion to suppress and motion to quash the warrant.

## II. Discussion

The defendants contend that the district court erred by denying their motion to suppress and motion to quash, arguing: (1) that the district court had no power to authorize silent video surveillance; (2) that Special

Agent Donlan misled the issuing judge by including false information in the affidavit; (3) that oral and silent video surveillance were not necessary because normal investigative procedures would have been successful; (4) that the government's surveillance exceeded the time period authorized by the court's order; and (5) that the search warrant was issued in violation of the Fourth Amendment.

## A.

The defendants first argue that Federal Rule of Criminal Procedure 41(b) does not authorize silent video surveillance and that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, amended by and retitled as Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510–2520 (Title I), prohibits domestic video surveillance. The determination of whether the district court has power to authorize silent video surveillance is a question of law, which we review de novo. *See United States v. Mesa–Rincon,* 911 F.2d 1433, 1435 (10th Cir.1990). While we have not previously addressed the issue, we now hold that the district court is empowered to authorize silent video surveillance in circumstances that satisfy the requirements of the Fourth Amendment.

The Fourth Amendment protects persons and their houses from unreasonable searches and seizures. U.S. Const. amend. IV. This protection certainly includes the right to be free from indiscriminate government video surveillance of the interior of an apartment. *Cf. United States v. Cuevas–Sanchez,* 821 F.2d 248, 251 (5th Cir.1987) (Fourth Amendment provides freedom from indiscriminate video surveillance of backyard activity). The Fourth Amendment also states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

A court of general jurisdiction has inherent power to issue a search warrant within the limits set forth in the Fourth Amendment. *See United States v. Torres,* 751 F.2d 875, 878–79 (7th Cir.1984). Although Congress can limit the procedural power of the federal courts, federal courts retain their traditional powers until Congress chooses to limit them with respect to a particular subject. *Id.* at 878; *see also* Fed. R.Crim.P. 57 ("In all cases not provided for by rule, the district judges and magistrate judges may regulate their practice in any manner not inconsistent with these rules"). Thus, unless limited in some way by Congress, the district court has inherent power to issue warrants authorizing silent video surveillance in situations that comply with the requirements of the Fourth Amendment.

Rule 41(b) authorizes the district court to issue a warrant based upon probable cause for the following purposes:

to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained.

Fed.R.Crim.P. 41(b). This language speaks in terms of "conventional searches," *Mesa–Rincon,* 911 F.2d at 1436 (citing *United States v. New York Tel. Co.,* 434 U.S. 159, 169, 98 S.Ct. 364, 370, 54 L.Ed.2d 376 (1977)), but the rule must not be interpreted too narrowly. The list of items subject to seizure under Rule 41[2] "does not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41." *New York Tel.,* 434 U.S. at 169, 98 S.Ct. at 370–71. The Supreme Court has indicated that "Rule 41 is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause." *Id.* (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507,

---

**2.** "The term 'property' is used in this rule to include documents, books, papers and any other

tangible objects." Fed.R.Crim.P. 41(h).

19 L.Ed.2d 576 (1967)). Thus, the rule is broad enough to include the electronic intrusion caused by silent video surveillance into otherwise constitutionally protected space.

Additionally, several of our sister circuits have addressed the issue before us. Based in large part upon the reasoning of *New York Telephone,* these circuits have unanimously held that Rule 41(b) is flexible enough to encompass silent video surveillance and that such surveillance is regulated by the requirements of the Fourth Amendment. *See United States v. Koyomejian,* 970 F.2d 536, 541–42 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 617, 121 L.Ed.2d 550 (1992); *Mesa–Rincon,* 911 F.2d at 1436; *United States v. Biasucci,* 786 F.2d 504, 507–512 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *Torres,* 751 F.2d at 877–85. We are persuaded by their reasoning and have found no authority to the contrary. Accordingly, we hold that silent video surveillance, conducted consistent with the Fourth Amendment, is authorized by and is not inconsistent with Rule 41(b).

The defendants contend that reliance upon *New York Telephone* for the proposition that silent video surveillance is authorized by Rule 41(b) inserts a fundamental flaw into the analysis because the holding of *New York Telephone* is limited to the use of a pen register (a mechanical device that records the numbers dialed on a telephone). Declaring allegiance to *New York Telephone,* the defendants would have us interpret Rule 41(b) as encompassing only those electronic intrusions which are equally or less intrusive than pen registers. While we agree that *New York Telephone,* 434 U.S. at 168–70, 98 S.Ct. at 370–71, specifically holds that use of a pen register is within the scope of Rule 41, we cannot ignore the Court's reasoning which clearly supports a broader reading of the rule. Admittedly, silent video surveillance, unlike a pen register, is a very intrusive procedure which should be allowed only in limited circumstances. Nevertheless, we are convinced that the reasoning of *New York Telephone* offers authoritative support for a reading of Rule 41(b) broad enough, in

our view and that of the other circuit courts cited above, to include silent video surveillance within its scope.

■ The defendants also argue that interpreting Rule 41(b) as authorizing silent video surveillance would be contrary to existing law. The defendants contend that Congress has prohibited domestic video surveillance by not including it within the terms of Title I (regulating wire, oral, and electronic surveillance) or the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801–1811 (1988) (FISA) (regulating foreign video surveillance), which allegedly govern the exclusive means of conducting electronic surveillance. We reject this argument.

Title I prohibits the interception of oral, wire, or electronic communications (as defined in 18 U.S.C. § 2510), except in limited circumstances governed by specific procedures. *See* 18 U.S.C. §§ 2511, 2518. The procedures in Title I "shall be the exclusive means by which electronic surveillance, as defined in section 101 of such Act [referring to FISA which regulates foreign video surveillance], and the interception of domestic wire and oral communications may be conducted." 18 U.S.C. § 2511(2)(f). This provision is silent as to any types of electronic surveillance that might fall outside the scope of FISA and Title I. The defendants concede that the terms of FISA and Title I do not regulate domestic video surveillance.[3] *See Koyomejian,* 970 F.2d at 541 ("Nothing in Title I or the FISA regulates or even discusses domestic silent video surveillance."). Nothing in Title I indicates an intent to ban all types of surveillance not specifically regulated therein. In our jurisprudence, "[t]he motto of the Prussian state—that everything which is not permitted is forbidden—is not a helpful guide to statutory interpretation." *Torres,* 751 F.2d at 880. Further, again we find that every circuit to have addressed this issue has concluded that Title I and FISA neither regulate nor prohibit domestic silent video surveillance, *see Koyomejian,* 970 F.2d at 538–41; *Mesa–Rincon,* 911 F.2d at 1437–38; *Biasucci,* 786 F.2d at 508; *Torres,* 751 F.2d at 880–82, and the

---

**3.** The defendants' brief states that "[i]t is undisputed that neither Title I nor FISA authorize

domestic video surveillance." (Appellants' Br. at 7.)

defendants cite no authority compelling us to rule to the contrary. Based upon the plain language of the statute and the analysis of our sister circuits, we conclude that Title I and FISA do not prohibit an order authorizing silent video surveillance under Rule 41(b).

**B.**

 The defendants' next three arguments are concerned with whether the district court's authorization order in this case satisfied the limitations imposed by the Fourth Amendment. An order authorizing the interception of oral communications is governed by 18 U.S.C. § 2518. Because we are addressing silent video surveillance for the first time, however, and it is at this time not regulated by statute, we pause to examine what we believe should be required in an application under Rule 41 to authorize domestic silent video surveillance in order to ensure compliance with the Fourth Amendment.

It is clear that silent video surveillance, like the interception of wire, oral, or electronic communications under Title I, results in a very serious, some say Orwellian, invasion of privacy. *See Torres*, 751 F.2d at 882 (finding television surveillance in combination with oral surveillance "exceedingly intrusive"). The procedural requirements of Title I ensure compliance with "the Fourth Amendment with regard to the necessarily unconventional type of warrant that is used to authorize electronic eavesdropping." *Id.* at 884. To ensure that silent video surveillance is authorized only in constitutionally appropriate circumstances we deem it wise, as have other circuits, to look to the procedures set forth in Title I for guidance in implementing the Fourth Amendment with regard to silent video surveillance. *See Koyomejian*, 970 F.2d at 542; *Mesa–Rincon*, 911 F.2d at 1438; *Biasucci*, 786 F.2d at 510; *Torres*, 751 F.2d at 884–85. We do not adopt every technical requirement of Title I, and we are mindful that what is reasonable under the Fourth Amendment necessarily varies from case to case. We conclude, however, that an order authorizing nonaudio video surveillance which complies with the following four requirements from Title I, in addition to probable cause, is sufficient to satisfy the Fourth Amendment:

(1) the judge issuing the warrant must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(3)(c); (2) the warrant must contain "a particular description of the type of [activity] sought to be [videotaped], and a statement of the particular offense to which it relates," *id.* § 2518(4)(c); (3) the warrant must not allow the period of [surveillance] to be "longer than is necessary to achieve the objective of the authorization,[ ]or in any event longer than thirty days" (though extensions are possible) *id.* § 2518(5); and (4) the warrant must require that the [surveillance] "be conducted in such a way as to minimize the [videotaping] of [activity] not otherwise subject to [surveillance] . . ." *id.*

*Koyomejian*, 970 F.2d at 542 (quoting *United States v. Cuevas–Sanchez*, 821 F.2d 248, 252 (5th Cir.1987)) (alterations in original); *see also Mesa–Rincon*, 911 F.2d at 1437; *Biasucci*, 786 F.2d at 510; *Torres*, 751 F.2d at 885.

In this case, while silent video surveillance was applied for and authorized under Rule 41(b), the government and the district court followed the procedures of Title I outlined above. The defendants contend that the affidavit was false and misleading because it made C/W–1 and Thelma Wyant appear to be two separate individuals, when in fact they were one. They also allege that the affidavit was misleading with respect to the likelihood of success through normal investigative procedures.

 We adopt the same standard of review for an application to engage in nonaudio video surveillance as we apply to wiretap applications, which is the same standard that we apply to conventional warrants. *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir.1988). We thus review the application in a practical and commonsense fashion, according broad discretion to the issuing judge's decision to authorize the surveillance. *See United States v. Garcia*, 785 F.2d 214, 221–

22 (8th Cir.) (wiretapping under 18 U.S.C. § 2518), *cert. denied sub nom., Barker et al. v. United States,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). The information in the affidavit supporting the application must present a *truthful* showing of probable cause. *Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S.Ct. 2674, 2680–81, 57 L.Ed.2d 667 (1978). A defendant may challenge a facially sufficient affidavit by showing that the facts included in the affidavit are false or were made in reckless disregard of the truth, or that facts were omitted with the intent to mislead or in reckless disregard of whether it was misleading. *Id.* at 155–56, 98 S.Ct. at 2676; *United States v. Lucht,* 18 F.3d 541, 546 (8th Cir.1994) (reviewing a wiretap affidavit). The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the remaining contents of the affidavit are sufficient to establish probable cause. *See Franks,* 438 U.S. at 156, 98 S.Ct. at 2676–77; *Lucht,* 18 F.3d at 546. If the remaining contents are insufficient to establish probable cause, the warrant must be voided and the fruits of the search suppressed. *Franks,* 438 U.S. at 156, 98 S.Ct. at 2676–77; *see also Garcia,* 785 F.2d at 222 (applying the requirements of *Franks* to wiretap applications).

■ In this case, the unidentified C/W–1 was in fact Thelma Wyant, named in the affidavit as a person who was continuing to commit violations. The government did not disclose to Chief Judge Wolle, either in the affidavit or orally, the fact that Wyant actually was the confidential witness and not a suspect. The affidavit stated and Donlan testified at the suppression hearing that he masked C/W–1's identity out of concern for her future safety because the defendants were known to be very dangerous.[4] Indeed, the defendants' propensity toward violence including murder was asserted factually in the affidavit.

The affidavit also stated that C/W–1's access to the apartment "is extremely limited"

and "[i]t is highly unlikely in the future that C/W–1 will be able to gain access to" the apartment. (Affidavit at 26, ¶ 50.) The defendants contend that this misled the issuing judge concerning the possible success of normal investigative procedures because the affidavit failed to disclose that Wyant, the C/W–1, had had a sexual relationship with Hedgewood, that she traveled with him to Las Vegas in December 1992, and that she paid the rent on the apartment sought to be surveilled with money provided by the defendants. Donlan testified that he was aware that Wyant had in the past a romantic relationship with Hedgewood but that her relationship with the others was purely business and was not sufficient to allow her access to the type of information that the government needed without placing Wyant in danger. The affidavit explained that although C/W–1 had been able to gather information from Hedgewood, she was unable to obtain information about all of the other members of the organization, their source of cocaine, the scope of the operation, or their method of distributing proceeds. Donlan testified that Wyant told him that she only went to the apartment for the purpose of purchasing cocaine or paying off an existing drug debt. Donlan also testified that the FBI, having already spent $9,000 through Wyant, would not authorize further expenditures for her to purchase drugs, and Wyant feared that she would draw suspicion if she continued to go to the apartment without purchasing cocaine or repaying her debt.

The district court found at the suppression hearing that "[n]o part of [the affidavit] constituted a deliberate false statement," and that the affidavit was not made with reckless indifference to the truth. (Mot. to Suppress Tr. at 82–83.) The district court found that one statement in the affidavit was incorrect—that Thelma Wyant was continuing to commit the violations when in fact she was not—but concluded that this statement "doesn't diminish, in the least, the substantive qualitative value of the rest of the affidavit." (*Id.* at 85.) The court also found that

---

**4.** Agent Donlan testified that a past investigation was compromised because the *Des Moines Register* published the identity of an informant on the front page of the paper after the affidavit which was used for a search warrant application and which named the informant had been made public. (Mot. to Suppress Tr. at 60–61.)

"Thelma Wyant's access to that apartment was basically as presented in the affidavit. There was no reckless disregard for the truth in not mentioning ... budgetary factors in providing funds for continued purchases...." (*Id.* at 85–86.) These findings by the district court "are findings of fact, which we must uphold unless clearly erroneous." *Garcia,* 785 F.2d at 222.

We have carefully reviewed the record, including reading the entire transcript of the suppression hearing, and conclude that the district court's findings are not clearly erroneous. The affidavit masked Wyant's identity to avoid public disclosure out of a concern for her safety, not with an intent to mislead the issuing judge on a material fact, and the one incorrect statement was not material to the issuing judge's finding of probable cause. Further, the issuing judge was not misled on the question of whether normal investigative procedures were adequate.[5] The affidavit provided several pages explaining what was known about the operation and C/W–1's role in it. (Donlan's Aff. at 9–14, Jan. 13, 1993.) The affidavit described an organization that was close, secretive, and very prone to violence, making it very difficult for undercover agents or even C/W–1 to infiltrate the organization sufficiently to determine the source of cocaine or the method used to distribute proceeds. This was adequate to support the application even without the additional information that the FBI had limited the funds for the operation. We find no clear error in the district court's findings that the issuing judge was not misled by the affidavit.

■ While we are satisfied that the government did not intentionally mislead the issuing judge or falsify material facts, we expressly disapprove of the government's failure to inform the issuing judge that C/W–1 was Thelma Wyant. *See United States v.*

*Strini,* 658 F.2d 593, 595 n. 2 (8th Cir.1981). We are not unsympathetic to the need to ensure the safety of cooperating witnesses in this type of situation. However, safety concerns are not compromised by sworn testimony before the issuing judge fully disclosing the fact of and the reason for masking the witness's identity in the affidavit. As we emphasized in *Strini,* "[a]lthough we do not approve of the government's conduct, ... we are not prepared to say that *in this case* suppression is required." *Id.* (emphasis added). Nevertheless, we call on the government to discontinue immediately the practice engaged in here.[6]

## C.

■ The defendants argue that the district court erred in finding that normal investigative methods were inadequate. This is another finding of fact subject to the clearly erroneous standard. *United States v. Davis,* 882 F.2d 1334, 1343 (8th Cir.1989). We held above that for both oral and silent video surveillance the Fourth Amendment requires, in part, that the issuing judge find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). This requirement does not mean that investigators must exhaust "all possible investigative techniques" before a court can issue an order authorizing silent video surveillance. *Garcia,* 785 F.2d at 223. Like wiretapping under Title I, we find that silent video surveillance is prohibited "only when normal investigative techniques are *likely* to succeed *and* are not too dangerous. Accordingly, the affidavit need not explain away all possible alternative techniques...." *Id.* (internal quotation and citation omitted).

---

5. The defendants cite *United States v. Simpson,* 813 F.2d 1462 (9th Cir.1987), and *United States v. Ippolito,* 774 F.2d 1482 (9th Cir.1985), in support of their contention that the affidavit was misleading on the issue of whether normal investigative procedures would have been successful in light of Wyant's relationship with Hedgewood. We have considered these cases and find them to be factually distinguishable from the case at hand.

6. We find it particularly distressing to note that the Assistant United States Attorney, Mr. Kayser, who presented the instant applications to Chief Judge Wolle, knowing the masking to have been done, is the same Assistant United States Attorney who was counsel for the government in *Strini* and who knew or should have known of this court's prior criticism of this tactic. (*See* Mot. to Suppress Tr. at 83–84.)

The affidavit listed seven normal investigative techniques that had been tried and failed, reasonably appeared unlikely to succeed, or were too dangerous to employ due to the organization's secretive nature and propensity toward violence. (*See* Donlan's Affidavit at 23–28, Jan. 13, 1993.) Donlan elaborated on each technique with a paragraph explaining the associated problems preventing them from being safe and successful to the extent necessary. The defendants argue that the affidavit was conclusory and ignored the fact that using Thelma Wyant as a confidential informant was successful in the past and was likely to succeed in the future. This contention, however, runs against the weight of the information in the affidavit, discussed above, when taken as a whole. We conclude that the issuing court's finding that normal investigative procedures were inadequate was not clearly erroneous.

**D.**

We reject the defendants' argument that the length of the oral and silent video surveillance exceeded the time authorized by the orders. They contend that the orders authorized surveillance for only 10 days, but the orders clearly state that the authorization may last up to 30 days and that the 30–day period begins "from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under this Order or ten (10) days from the date this Order is entered, whichever is earlier." (Order Authorizing Interception of Visual Non-verbal Conduct, at 4, Jan. 13, 1993; Order Authorizing Interception of Oral Communications, at 5, Jan. 13, 1993.) The surveillance continued from January 13 through January 29, 1993. This period does not exceed the 30 days authorized for surveillance. The defendants' argument is based upon a faulty reading of the order. The district court did not err in denying the defendants' motion to suppress.

**E.**

The defendants' motion to quash the search warrant was premised upon their contention that the surveillance authorized in this case was unlawful. Having concluded that the oral and silent video surveillance was lawful, the motion to quash the search warrant necessarily fails. The district court did not err in denying the motion to quash the search warrant.

**III. Conclusion**

To summarize, we conclude that district courts have the power to authorize silent video surveillance in situations that satisfy the Fourth Amendment. In this case, the affidavit of Special Agent Donlan did not mislead the issuing judge, the issuing judge's determination that normal investigative procedures were inadequate was not clearly erroneous, and the surveillance did not exceed 30 days. Therefore, the district court did not err in denying the defendants' motion to suppress. Furthermore, because the surveillance was lawful, the defendants' motion to quash the search warrant was properly denied. Accordingly, we affirm the judgment of the district court.