# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3050

_____

United States of America,

Appellee,

v.

Gerald Rey Bailey,

Appellant.

_____

No. 99-3225

_____

United States of America,

Appellee,

v.

Anthony Wells Johnson,

Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

No. 99-3244

_____

United States of America,

    Appellee,

    v.

Gregory Donnell Hedgewood,

    Appellant.

_____

No. 99-3647

_____

United States of America,

    Appellee,

    v.

Eric Lemar Falls,

    Appellant.

\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  
\*  

_____

Submitted: April 14, 2000
Filed: December 22, 2000

_____

Before BOWMAN, MAGILL, and HANSEN, Circuit Judges.

2

_____

HANSEN, Circuit Judge.

Gerald Rey Bailey, Anthony Wells Johnson, Gregory Donnell Hedgewood, and Eric Lemar Falls ("defendants") appeal the district court's[1] decision denying their 28 U.S.C. § 2255 motions to vacate, set aside, or correct their sentences under 18 U.S.C. § 924(c).  The district court found that the defendants failed to demonstrate that they were actually innocent of carrying a firearm during and in relation to their drug trafficking conspiracy.  We affirm.

I.  Background

All four defendants pleaded guilty to numerous cocaine and cocaine base trafficking offenses for which they were sentenced to prison terms ranging from 210 months to 360 months.  Each of the defendants also pleaded guilty to the crime of using or carrying a firearm during and in relation to a drug trafficking conspiracy for which they each were sentenced to an additional five-year consecutive sentence.  See 18 U.S.C. § 924(c)(1).

The defendants appealed their convictions to this court.  See United States v. Falls, 34 F.3d 674 (8th Cir. 1994).  We affirmed the convictions after rejecting the defendants' challenges to the district court's refusal to suppress certain evidence obtained by the government from intercepted oral communications and by use of video surveillance.  See id. at 683.  Following our decision, however, the Supreme Court rendered its decision in Bailey v. United States, 516 U.S. 137, 143-44 (1995), holding that a conviction for "use" under § 924(c) requires a showing of active employment of

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

a firearm rather than mere possession by a defendant. The defendants filed the instant § 2255 motions asserting that the government failed to obtain valid § 924(c) convictions in light of the ruling in Bailey.

The district court found that the defendants had procedurally defaulted their Bailey claims by failing to raise them during the direct review process. The district court further found that the defendants failed to demonstrate cause and prejudice or actual innocence to excuse the default. Although the district court found that the defendants had probably proven actual innocence of "use" under § 924(c), the court found sufficient evidence to support a "carry" conviction, and therefore, the defendants had failed to prove actual innocence. Accordingly, the district court denied the defendants' § 2255 motions. The district court, however, granted the defendants a certificate of appealability on the sole issue of whether any of the defendants established actual innocence to excuse the procedural defaults. We review the district court's legal conclusions de novo and its factual findings for clear error. See United States v. Felici, 208 F.3d 667, 669-70 (8th Cir. 2000).

## II. Analysis

A defendant who has procedurally defaulted a claim by failing to raise it on direct review may only raise that claim in a § 2255 proceeding if the defendant demonstrates cause and prejudice for the default or by demonstrating actual innocence. See Dejan v. United States, 208 F.3d 682, 685 (8th Cir. 2000) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). The defendants in this case failed to establish cause and prejudice because their Bailey-based argument could have been raised at the time of the guilty pleas. See Dejan, 208 F.3d at 685 (explaining that "even if the plea court was unlikely to accept his pre-Bailey 'use' argument, assumed futility is not considered 'cause' for not raising the claim"). Thus, the defendants may assert their present Bailey claims and attempt to obtain relief from their additional five-year

consecutive sentences only if they can establish that they were factually actually innocent of the § 924(c) offense.

In order to establish a valid claim of actual factual innocence, the defendants "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [them]." Hohn v. United States, 193 F.3d 921, 923-24 (8th Cir. 1999) (citing Bousley, 523 U.S. at 623); accord, Schlup v. Delo, 513 U.S. 298, 327-38 (1995). The defendants also "must show factual innocence, not simply legal insufficiency of evidence to support a conviction." Dejan, 208 F.3d at 686 (citing Bousley, 523 U.S. at 623).

There is little doubt that at least one firearm was displayed and that probably two firearms were carried during the conspiracy at the Des Moines apartment which served as the Iowa headquarters of the defendants' California-based drug trafficking conspiracy. The conspiracy began prior to January 13, 1993, and lasted until the defendants were arrested on January 29, 1993. See Falls, 34 F.3d at 676-77. The district court found that

> [t]he record, including the video surveillance tapes,[2] reveals that on January 24, 1993, during the course of the conspiracy, one of the defendants, probably Falls, actually held a firearm in his hand for a few minutes in the apartment the defendants had acquired for the purpose of their drug distribution conspiracy, and this occurred in the presence of the other defendants.

(Gov't Add. at 5-6.) That firearm has been described as a silver handgun which the government conceded during oral argument was brought into the apartment by a visitor, and then handled and displayed by defendant Falls in the presence of the other

---

[2]Despite the efforts of all counsel involved to find it, the videotape cannot be located.

defendants. The silver gun was returned to the visitor who then left the apartment with the silver gun in her purse. A second weapon, described as a loaded .45 caliber was seized from the bedroom of the apartment when the defendants were arrested on January 29, 1993. Other surveillance tapes show that .45 present at various places in the apartment at various times during the conspiracy. (Johnson App. at 200.) The amended final copy of the presentence investigation report (PSIR) reveals that a witness observed a handgun in the apartment during the December (1992) to January 1993 time period and asked defendant Bailey to remove it from the couch area in the living room, which he did. (Bailey and Falls Br. at 18.) It is somewhat unclear from the record whether the gun removed from the couch and carried by Bailey to a different location within the crack house was the silver handgun or the loaded .45 which was kept in the apartment. (Johnson PSIR, App. at 62, ¶ 19, ("Surveillance photos also evidenced that on January 24, 1993, Eric Falls possessed a silver handgun in the apartment, while Bailey, Hedgewood, and Johnson were also present. [Witness's name] had observed the handgun in the apartment during the December to January 1993 time period, and asked Bailey to remove it from the couch area in the living room.")). Question: Is "the handgun in the apartment" which Bailey carried from the couch the silver handgun or the .45 which was kept in the apartment? If it is the silver gun, then two different defendants physically handled and carried that firearm. If it is the .45, then two different firearms were handled and carried within the apartment during the ongoing conspiracy. In addition, the PSIR for each defendant shows that another coconspirator--William Person--was arrested on January 25, 1993, in Kansas City after police found $64,225 and a 9 mm. pistol in the motor home he was driving. (Johnson App. at 61; Hedgewood App. at 53, 58, and 62.) The money Person was carrying constituted drug proceeds of the conspiracy, some of which proceeds came from the operation in Des Moines. (See Johnson App. at 61; Sent. Tr., Vol. II at 61-62, 91, 113.) Both 9 mm. and .45 ammunition were seized from the apartment. The defendants do not, nor could they, seriously challenge these factual findings, which clearly show that at least one if not three firearms were physically handled and carried by members of the drug trafficking conspiracy during the course of that conspiracy.

See, e.g., United States v. Turner, 157 F.3d 552, 557 (8th Cir. 1998) (explaining that transporting a firearm in a vehicle satisfies "carrying" for purposes of § 924(c), citing to Muscarello v. United States, 524 U.S. 125, 139 (1998)).

Nevertheless, the defendants argue that the silver gun handled and displayed in the apartment was not carried "in relation to" the drug conspiracy because there were no actual drug trafficking activities going on in the apartment at the time of the carrying. See 18 U.S.C. § 924(c)(1) ("[w]hoever, during *and* in relation to any . . . drug trafficking crime . . . uses or carries a firearm") (emphasis added)). At a minimum, "in relation to" means that "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 238 (1993). In other words, the firearm must facilitate or have the potential for facilitating the drug trafficking offenses. See id.

The defendants have failed to carry their burden of demonstrating that the firearms were not carried "in relation to" the drug conspiracy. The videotape showing Falls holding a firearm for a few minutes in the Des Moines apartment, or the witness testimony that Bailey on an earlier occasion had carried either that firearm or the .45 from the living room couch are enough, standing alone, to support a finding that a firearm was carried "in relation to" the drug conspiracy. Though we agree with defendants that temporal proximity between the carrying of a firearm and drug trafficking activity is important, a finding of temporal proximity or the lack thereof does not automatically establish or prohibit a finding of "in relation to." In the particular circumstances of this case, the lack of simultaneous temporal proximity is not fatal. The Des Moines apartment where at least one firearm was displayed and carried served as the headquarters for facilitating the Iowa drug trafficking of the California defendants. Large quantities of cocaine and cocaine base were stored, packaged, and cooked at this apartment; drug proceeds were counted in the apartment; and numerous drug transactions were completed from and in the apartment. The fact that Falls and

7

Bailey openly handled and carried a firearm in the apartment facilitated the drug trafficking activity by reassuring the other coconspirators that they had protection for themselves, the drugs, and the drug proceeds. The defendants were in that apartment for one primary reason--drug trafficking--and any firearm being carried and displayed was possessed for the reasonably apparent purpose of facilitating those drug trafficking activities. See Swedzinski v. United States, 160 F.3d 498, 501 (8th Cir. 1998) (rejecting defendant's evidence that he was carrying a handgun in order to shoot squirrels because the carrying took place shortly after defendant inspected his marijuana plants and while carrying marijuana-related materials). We therefore think it unlikely that a reasonable juror would find that Bailey and Falls carried a firearm just by coincidence, by accident, or for any other legal purpose. In fact, we think it highly probable that a juror would find that a gun was handled, displayed, and carried "in relation to" the numerous drug trafficking offenses committed in the apartment based on Bailey's and Falls' conduct.

Moreover, there is the additional evidence that a firearm was carried "in relation to" the drug conspiracy. Coconspirator Person was arrested in Kansas City carrying a firearm while transporting the conspiracy's drug proceeds back to California from Des Moines. A reasonable juror could certainly find that the carrying of this firearm facilitated the drug trafficking activities by protecting the coconspirator and the drug proceeds.[3] Indeed, defendant Johnson admitted that a weapon would serve such a

---

[3]Although the district court did not rely on Person's carrying of a firearm while transporting the drug proceeds in rendering its judgment, we are free to "affirm the district court on any basis supported by the record." Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998). We note that none of the appellants filed a reply brief contesting the government's factual assertions and argument concerning Person's carrying of a firearm. We also note that the district court's judgment and sentence in the criminal case adopted the factual findings in the PSIR, except for the determination of drug quantity. (Johnson App. at 84.) At sentencing, the district court did not convert the $64,225 seized from Person into a quantity of drugs because it was concerned that to do so would result in "double counting." That is, the likelihood was

8

purpose to the district court during his plea proceedings. (See Plea Tr., Johnson App. at 202-03).

Each of the defendants is criminally liable for the actions of his coconspirators pursuant to the doctrine announced in Pinkerton v. United States, 328 U.S. 640, 647-48 (1946). See United States v. Navarrete-Barron, 192 F.3d 786, 792 (8th Cir. 1999) (explaining that "under Pinkerton, each member of a conspiracy may be held criminally liable for any substantive crime committed by a coconspirator in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act" (citations omitted)).

Liability under the Pinkerton doctrine exists in this case if (1) each defendant was a member of the conspiracy when the firearms were carried or displayed, (2) the coconspirators acted in furtherance of the conspiracy when the firearms were carried or displayed, and (3) the act of carrying or displaying the firearms was reasonably foreseeable to the other members of the conspiracy as a natural outgrowth of the conspiracy. See id. at 792-93 (citing Pinkerton, 328 U.S. at 647-48). There is no doubt that all four defendants were members of the conspiracy when the firearms were carried and displayed; there is little doubt that the carrying of the firearms was reasonably foreseeable as a natural outgrowth of trafficking in large amounts of cocaine and cocaine base and the cash generated therefrom; and we are convinced based on our previous discussion of the "in relation to" issue that the evidence is sufficient to find that the carrying and displaying of the firearms facilitated and furthered the drug conspiracy. We have said before that guns are tools of the drug dealer's trade. See United States v. Hammer, 3 F.3d 266, 270 (8th Cir. 1993), ("Guns are typical tools of the drug trade, used to protect merchandise and money."), cert. denied, 510 U.S. 1139 (1994). We have also held that Bailey does not preclude the continued application of

---

that the proceeds were from drug quantities already attributed to the four defendants. See Sent. Tr., Vol. II at 113, 150.

Pinkerton coconspirator liability to § 924(c)(1) offenses.  See United States v. Rodger, 100 F.3d 90, 91 n.2 (8th Cir. 1996), cert. denied, 524 U.S. 853 (1997). Thus, each defendant who is not liable directly under § 924(c) is liable as a coconspirator pursuant to Pinkerton.

In short, the defendants have failed to meet their burden of showing that no member of the conspiracy ever carried a firearm during and in relation to the drug trafficking activities.  We therefore affirm the district court's finding that the defendants have failed to show actual innocence of the § 924(c) offenses.

Finally, we hold that the district court did not abuse its discretion in failing to conduct an evidentiary hearing.  See Bradshaw v. United States, 153 F.3d 704, 708 (8th Cir. 1998).  The defendants have proffered no evidence to counter the information contained in the PSIR relating to the firearm activities, and the government's concessions at oral argument as to the contents of the missing videotape vitiate any need to replay it.

## III.  Conclusion

For the reasons stated herein, we affirm the judgment of the district court denying defendants' requests for relief under 28 U.S.C. § 2255.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10